DOUGLAS COUNTY CHILD SUPPORT ENFORCEMENT UNIT for
Dianne NIEMI, Petitioner-Appellant,

v.

Robert P. FISHER, Respondent-Respondent.†

Court of Appeals

*No. 95–1960. Submitted on briefs February 5, 1996.—Decided
March 12, 1996.*

(Also reported in 547 N.W.2d 801.)

†Petition to review denied.

807

For the petitioner-appellant the cause was submitted on the briefs of *Joseph J. Mihalek* of *Fryberger, Buchanan, Smith & Frederick, P.A.*, Duluth, Minnesota.

For the respondent-respondent the cause was submitted on the brief of *Chris A. Gramstrup*, Superior.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Dianne Niemi appeals a judgment ordering Robert P. Fisher to pay $3,000 in arrearages. The trial court determined that while Fisher had arrearages of over $18,000 calculated from the records of the clerk of court, Fisher should be credited for direct payments he made and for the period of time his son lived with him. Niemi contends that: (1) the trial court lacked power to grant Fisher a credit against his arrearages; (2) if the trial court had the power to grant the credit, it erroneously exercised its discretion by requiring Fisher to pay only $3,000 in arrearages; and (3) the trial court erred when it denied Niemi's motion for statutory interest on the arrearages under

§ 767.25(6), STATS. We conclude that the trial court lacked power to grant Fisher a credit against his arrearages and erred when it denied Niemi statutory interest.[1] Therefore, we reverse and remand to the trial court with directions to order Fisher to pay the total amount of the arrearages and award interest pursuant to § 767.25(6).

Fisher and Niemi were divorced on July 8, 1966. Niemi was awarded custody of their two minor children, and Fisher was ordered to pay $165 per month for child support through the clerk of court. Fisher failed to make approximately ten years of child support payments through the clerk of court, resulting in arrearages of over $18,000.

In 1992, Niemi moved for judgment on the arrearages. At the hearing, Fisher claimed that he regularly made child support payments directly to Niemi, with some exceptions. He further claimed that he even paid $200 per month for a period of time to make up arrearages. Niemi denied that he made direct payments to her for child support except for the $330 that was noted in the court's payment record for 1970. Niemi claimed that all other direct payments she received from Fisher were for health insurance and medical expenses, which Fisher was required to pay under the divorce judgment. The trial court dismissed her claim for child support arrears concluding that the doctrines of laches, equitable estoppel and waiver precluded Niemi from collecting the arrearages. Niemi appealed. We reversed concluding that the defenses of laches, equitable estoppel and waiver did not apply with regard to her delay in

---

[1] Because we conclude that the trial court lacked power to grant Fisher a credit against his arrearages, we do not reach the issue whether the trial court erroneously exercised its discretion.

filing for judgment, and remanded for the trial court to determine whether Fisher made direct payments.[2] *See Douglas County Child Support Enforcement Unit v. Fisher*, 185 Wis. 2d 662, 517 N.W.2d 700 (Ct. App. 1994).

On remand, and after a hearing, the trial court found that Fisher had made direct payments to Niemi and that Fisher should be credited for the direct payments and for the period of time his son came to live with him. Although the exact amount of the direct payments was difficult to determine, the trial court found as a fact that the arrearage was $3,000. The trial court also denied Niemi's motion for statutory interest on the arrearages pursuant to § 767.25(6), STATS.

Because each of the issues Niemi raises requires the interpretation of a statute, we are presented with questions of law that we review without deference to the trial court. *Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57, 61 (1993). Our purpose in interpreting a statute is to ascertain and give effect to the legislature's intent. *Id.* If the language of the statute is clear and unambiguous, we give the language its ordinary meaning and apply it to the facts of the case. *Id.* We look beyond the statutory language only if the statute is ambiguous. *Id.* A statute is ambiguous if reasonable people could understand it in more than one way. *Id.*

First, Niemi contends that the trial court was without power to grant Fisher a credit toward arrearages. Niemi argues that the Wisconsin Legislature, in

---

[2] Because the parties did not raise the issue in the previous appeal or this appeal, we did not and do not address whether equitable estoppel could apply to the method in which Fisher made payments.

1993 Wis. Act 481, removed the power of the courts to grant credit against child support arrearages, effective June 11, 1994, a few weeks after our previous remand in this case.[3]

Prior to 1993 Wis. Act 481, a trial court had discretion to grant equitable credit against arrearages for direct expenditures made for support in a manner other than that prescribed in the order or judgment, if the order or judgment was entered prior to August 1, 1987. *See Schulz v. Ystad*, 155 Wis. 2d 574, 603-04, 456 N.W.2d 312, 323 (1990); *Rummel v. Karlin*, 167 Wis. 2d 400, 402-03, 481 N.W.2d 695, 697 (Ct. App. 1992). While *Schultz* concluded that § 767.32(1m), STATS., effective August 1, 1987, prohibited credits against arrearages, it also determined that the statute applied prospectively only. *Rummel*, 167 Wis. 2d at 403, 481 N.W.2d at 697.

In 1993 Wis. Act 481, § 118, the legislature amended § 767.32(1m), STATS., to add the underlined language and provide as follows:

> In an action under sub. (1) to revise a judgment or order with respect to child support, maintenance payments or family support payments, the court may not revise the amount of child support, maintenance payments or family support payments due, or an amount of arrearages in child support, maintenance payments or family support payments that has accrued, prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

---

[3] We issued our previous decision in this case on May 24, 1994. *See Douglas County Child Support Enforcement Unit v. Fisher*, 185 Wis. 2d 662, 517 N.W.2d 700 (Ct. App. 1994). 1993 Wis. Act 481 was published on June 10, 1994, and the relevant portions became effective June 11, 1994.

Further, the legislature created § 767.32(1r), STATS., which provides:

> In an action under sub. (1) to revise a judgment or order with respect to child support or family support, the court may not grant credit to the payer against support due prior to the date on which the action is commenced or payments made by the payer on behalf of the child other than payments made to the clerk of court under s. 767.265 or 767.29 or as otherwise ordered by the court.

1993 Wis. Act 481, § 119.

Section 767.32(1m) and (1r), STATS., unambiguously provide that a trial court cannot grant credit for direct payments for support made in a manner other than that prescribed in the order or judgment providing for support. This is consistent with *Schultz* and *Rummel* which conclude that § 767.32(1m) prohibits equitable credits. However, in 1993 Wis. Act 481, the legislature made it clear that the new law applied retroactively. Section 9326(2) of 1993 Wis. Act 481 provides as follows:

> REVISIONS OF CHILD SUPPORT JUDGMENTS OR ORDERS. The treatment of section 767.32(1m) and (1r) of the statutes first applies to arrearages existing, and child support, maintenance payments and family support payments past due, on the effective date of this subsection [June 11, 1994], *regardless of when the judgment or order under which the arrearages accrued, or the child support, maintenance payments or family support payments are owed, was entered.* (Emphasis added.)

■

The trial court's judgment was entered on April 19, 1995. Under the unambiguous language of the Act, as

813

of June 11, 1994, a court is without discretion to grant credits against arrearages regardless of when the judgment or order was entered. Accordingly, the trial court was without power to grant Fisher credit in its judgment on April 19, 1995.

Fisher, however, argues that Niemi's original motion was filed pursuant to § 767.30(3)(c), STATS., to determine the amount of arrearages and was not an action under § 767.32(1), STATS., to revise a judgment or order. Section 767.32(1m) and (1r) applies only to revisions under § 767.32(1).

It is irrelevant that Niemi's original motion was filed pursuant to § 767.30(3)(c), STATS. Fisher requested that he be given credit for direct payments he made for child support. Section 767.30(3)(c) does not authorize the court to grant credit against arrearages. The court's authority to grant credit is derived from § 767.32(1), STATS. *See Schultz.* To grant a credit, the court must revise the judgment under § 767.32(1) with respect to the method in which payments are made. Moreover, the only statute dealing specifically with credit is § 767.32(1r), which specifically states that a court cannot grant credit. Accordingly, we conclude that the trial court was acting pursuant to § 767.32(1) when it granted the credit and under § 767.32(1r), the court was without power to do so.

Next, Niemi contends that the trial court erred when it refused to award her interest under § 767.25(6), STATS. Section 767.25(6) states: "A party ordered to pay child support under this section *shall* pay simple interest at the rate of 1.5% per month on any amount unpaid, commencing the first day of the 2nd month after the month in which the amount was due." (Emphasis added.)

814

Under the unambiguous language of § 767.25(6), STATS., a person ordered to pay child support is required to pay interest when child support is overdue. The language makes interest on unpaid child support mandatory. Further, § 767.25(6) applies to arrearages accrued as of its effective date on July 2, 1983, as well as support arrearages accruing after that date. *Greenwood v. Greenwood*, 129 Wis. 2d 388, 392, 385 N.W.2d 213, 215 (Ct. App. 1986).

The trial court determined that it would be inequitable to award Niemi interest because she did not timely exercise her rights. However, under § 767.25(6), STATS., the trial court had no discretion in assessing interest on the child support arrearage, even though it determined awarding interest would be inequitable. Because § 767.25(6) requires Fisher to pay interest on his child support arrearage, we conclude the trial court erred when it denied Niemi's motion for interest.

We confess that the results of this case are troublesome because the trial court determined as a fact that Fisher made direct payments. Because § 767.32(1m) and (1r), STATS., precludes recognition of these payments, Niemi is unfairly enriched by double payments. This is a public policy decision made by the legislature, apparently on the belief that the public interest in addressing the problem of nonpayment of child support is best served by limiting payments to those made in accordance with the divorce judgment. This policy fixes arrearages with certainty and facilitates the determination as to who owes arrearages and what amount. Because creation of public policy expressed by clear and unambiguous legislation is the exclusive prerogative of the legislative branch of government, the courts

815

are powerless to do anything other than apply the policy as determined by the legislature.

Because we conclude that the trial court was without power to grant Fisher a credit against his arrearages and the trial court was required to award Niemi interest on the arrearages, we reverse the judgment and remand to the trial court to order Fisher to pay the total amount of arrearages and award Niemi interest on the arrearages pursuant to § 767.25(6), STATS.

*By the Court.*—Judgment reversed and cause remanded.

CANE, P.J. (*dissenting*). I respectfully dissent. Dianne Niemi relies on §§ 767.32(1m) and 767.32(1r), STATS., to prohibit the circuit court from granting any credits for payments not made through the clerk of court. Section 767.32(1m) provides that the circuit court may not revise the amount of child support due under an order or judgment for support prior to the date that the notice of a petition to revise support is given to the custodial parent. This section eliminated a child support obligor's right to petition for retroactive modification of support and thereby redefine his or her obligation with respect to accumulated support arrearages. *Schulz v. Ystad,* 155 Wis. 2d 574, 598, 456 N.W.2d 312, 321 (1990). What is important to note is that § 767.32 is directed at an obligor parent's efforts to revise the *amount* of child support payments. Section 767.32(1r) also refers to an action to revise the amount of child support and prohibits the circuit court from giving credit against the support payment other than payments made through the clerk of court.

However, Dianne Niemi's motion was filed pursuant to § 767.30(3)(c), STATS., which provides:

> If the party fails to pay a payment ordered under sub. (1) . . . the court may by any appropriate remedy enforce the judgment, or the order as if it were a final judgment, including any past due payment and interest. Appropriate remedies include but are not limited to:
>
> . . . .
>
> (c)   Money judgment for past due payments.

Here, Niemi's original motion alleges "that said Respondent failed to maintain regular child support payments as ordered by the aforementioned divorce judgment, and accordingly, he has accrued an arrears . . . ." In short, the purpose of these hearings in response to Niemi's motion was not to revise the amount of a child support order, but rather to obtain a money judgment for the child support payments not made, the arrears.

The factual issue before the trial court was whether Robert Fisher made the required child support payments. Fisher contended that his payments were made directly to Niemi while she contended that the few payments he made were for health insurance. Rejecting Niemi's testimony, the trial court found that Fisher made a substantial number of child support payments by check or money order directly to Niemi. It also concluded that Fisher's support payments were not required when their youngest son lived with Fisher. The evidence more than amply supports the trial court's findings. Consequently, I would reject the application of § 767.32, STATS., to this proceeding which was solely for the purpose of obtaining a money judgment for the unpaid child support.

Additionally, I would conclude that even if § 767.32, STATS., applies, Niemi is equitably estopped from asserting this statute, and the trial court is permitted to consider the support payments made directly to Niemi. Here, the trial court found that for years Fisher made his support payments by check or money order directly to Niemi and that she accepted these payments on a regular basis without objection. This is understandable because both parents were living in California when Fisher started paying Niemi directly, making it less practical to pay through the clerk of circuit court in Douglas County, Wisconsin. Niemi also consented to their youngest son living with Fisher for about five months shortly before the son reached age eighteen.

I recognize that in *Schulz* the supreme court permitted the circuit court to allow credit against the support payments to avoid a manifest injustice or unjust enrichment. However, the court was reviewing the general rule existing prior to the adoption of § 767.32(1m), STATS. Because we are now dealing with a statute, I also recognize that we must not refuse to apply a statute because its strict application would create a hardship. It is our duty to expound the statute as it stands, even if the consequence is a hardship.

However, as the supreme court recognized in *Schulz,* we cannot close our eyes to reality. To conclude that these repeated payments were not made with Niemi's express or implied consent ignores reality. Similarly, the reality of the circumstances suggests that Niemi consented to their youngest son living with Fisher. The trial court's findings are clear and amply supported by the evidence. Except for the sum of $3,000, Fisher made his court-ordered child support

payments directly to Niemi, who repeatedly accepted these payments without objection.

Therefore, I would conclude under these circumstances that Niemi is equitably estopped from asserting § 767.32(1m) and (1r), STATS., which under the majority's analysis prevents the trial court from considering the payments made outside the clerk of court's office.[1] To require Fisher to pay again for the child support payments results in a manifest injustice to Fisher and an unjust enrichment for Niemi. A custodial parent should not be permitted to directly accept the child support payments and then later recover a money judgment for those same payments simply because they were not made through the clerk of court.

Finally, I would also construe § 767.32(1r), STATS., to only prevent the trial court from giving credit against the required support payments when it involves gifts or other voluntary expenditures made on behalf of the child, not support payments made directly to the custodial parent. The purpose of this statute is to prevent unilateral modifications of court orders, which tend to interfere with the right and responsibility of the custodial parent to decide how the support money should be spent. When the support money is given directly to the custodial parent, this consideration is no longer applicable.

I do agree with the majority however that Fisher must pay interest on the unpaid child support pay-

---

[1] Fisher did not raise this particular equitable estoppel argument because the purpose and focus at the hearing was to determine what support payments Fisher made and, accordingly, any arrearage. Although Fisher never presented this particular argument, I would conclude under the circumstances it is appropriate for this court to address this issue.

ments. That interest should be on the $3,000 of unpaid payments.