IN RE the MARRIAGE OF:

Faye V. MONICKEN, k/n/a Faye V. Bergin, Joint-Petitioner-Appellant,

v.

John M. MONICKEN, Joint-Petitioner-Respondent.†

Court of Appeals

No. 98–2922. *Submitted on briefs March 10, 1999.—Decided March 30, 1999.*

(Also reported in 593 N.W.2d 509.)

†Petition to review denied.

On behalf of the joint-petitioner-appellant, the cause was submitted on the brief of *Steven L. Miller* of *Miller & Miller* of River Falls.

On behalf of the joint-petitioner-respondent, the cause was submitted on the brief of *Timothy J. O'Brien* of *Bakke Norman, S.C.* of New Richmond.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J.   Faye Monicken appeals a judgment denying her motion for contempt and child support arrearage, including statutory interest, against her ex-husband, John Monicken.[1] On appeal, Faye argues

---

[1] The record does not reflect that a final written judgment was entered. Rather, Faye appeals from the circuit court's "final

that under § 767.32(1r), STATS., 1997–98, equitable estoppel cannot be used to credit or modify an arrearage. Alternatively, she contends that John failed to establish the elements of equitable estoppel. We conclude that the circuit court's finding that John complied with the amended divorce judgment is clearly erroneous because: (1) John paid only $448 per month under an extrajudicial oral agreement and not $500 per month as the amended judgment requires; and (2) he failed to make the $500 payments directly to Faye as ordered in the amended judgment. Additionally, we agree with Faye that newly amended § 767.32(1r)[2] limits a circuit court's authority to modify an existing child support arrearage. Thus, we remand this matter so the trial court may consider whether under § 767.32(1r), John should receive credit for expenditures made in a manner other than as prescribed in the amended judgment.

[2] *See* 1997 Wis. Act 273.

## I. BACKGROUND

The following facts are essentially undisputed. Faye and John Monicken divorced on December 2, 1992. Their marital settlement agreement, which the circuit court approved and incorporated into the divorce judgment, provided for joint legal custody of their then minor children, Emily, Andrea, and Timothy; designated Faye as the primary caretaker; and granted her primary physical placement of their children. The original judgment provides that on the first day of each month, "John M. Monicken shall pay to Faye V. Monicken toward the support of the minor children, the sum of Five Hundred and 00/100 ($500.00) Dollars to be deducted from his income pursuant to an Assignment of Income as hereinafter provided." Further, the original judgment provides that John will maintain the children's health insurance and that John and Faye will split the children's uninsured medical expenses. The amended judgment provides that: "All payments provided for herein shall commence as provided in the Marital Settlement Agreement, and be made directly by John M. Monicken and Faye V. Monicken without the involvement of the Clerk of Court's Office."[3]

In January of 1993, the parties orally agreed to a different child support and placement arrangement whereby they would share physical placement and expenses equally. In January and February, John paid

---

[3] It is unusual for a circuit court to permit direct child support payments to the other spouse. Rather, a circuit court customarily orders that support payments be made through the clerk of court's office. Because the parties did not address whether a circuit court may issue an order permitting such direct payments, we need not address the issue. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992).

a sum total of $500 in child support. While the circuit court made no factual findings regarding the extrajudicial oral agreement's details, the parties concede that under the oral agreement, money would be paid directly to the children or a third party. In spring 1993, Faye told John that the agreement was not working out.

In December 1997, Faye filed a contempt motion alleging that John failed to pay his child support as agreed by the parties and incorporated into the amended judgment.[4] Faye requested child support arrearage, plus statutory interest, from January 1993 to June 1997, totaling nearly $35,000.[5] In response, John filed a motion to dismiss Faye's contempt motion, claiming that in January 1993, the parties had orally modified their child support agreement to share equally the children's placement and expenses. John alleged that since January 1993, he had relied on this agreement and regularly made payments both directly to the children in the form of an allowance and to third parties for the children's clothing, school and personal needs. Based on the parties' January 1993 extrajudi-

---

[4] Faye filed the December motion pro se. In January 1998, she retained counsel and filed an amended notice of motion and motion.

[5] Faye requests $24,055.21 in child support arrearage plus statutory interest of $10,850, for a total of $34,905.21. She noted that she had originally requested $29,500 in arrearage from January 1993 to October 1997, but stipulated to suspend child support as of June 1, 1997, for which she subtracted $2,500. Additionally, she reduced the arrearage by $500, the amount she concedes John paid her directly in January and February of 1993. Finally, she points out that she further reduced the arrearage by $1,104.79, half of her children's uninsured medical expenses.

cial oral agreement, he claimed that Faye should be equitably estopped from recovering child support arrearage.

The circuit court denied Faye's contempt motion. In its memorandum decision, the court framed the two issues as whether child support arrearages existed, and if so, whether the doctrine of equitable estoppel is a viable defense to a claim of child support arrearage. First, it concluded that no arrearages existed. It found that John and Faye had agreed to the extrajudicial oral modification, which provided that John would make direct payments to the children and third parties. Additionally, the circuit court reasoned that pursuant to *Schulz v. Ystad*, 155 Wis. 2d 574, 604, 456 N.W.2d 312, 323–24 (1990), John fully complied with the spirit and intent of the marital settlement agreement and the January 1993 modification. Because the circuit court found compliance with the amended judgment, it concluded that John was not in contempt.

Based on its determination that John had fully complied, the circuit court deemed it unnecessary to determine whether § 767.32(1m) and (1r), STATS., allowed revision of the judgment. Distinguishing *Douglas County Child Support v. Fisher*, 200 Wis. 2d 807, 547 N.W.2d 801 (Ct. App. 1996), on its facts, the circuit court concluded that neither subsection "preclude[s] recognition of the direct payments made by John to Faye, the minor children or other third parties." Second, the court held that under the facts, the extrajudicial oral agreement was enforceable under the doctrine of equitable estoppel, citing *Harms v. Harms*, 174 Wis. 2d 780, 785, 498 N.W.2d 229, 231 (1993). Faye appealed the judgment.

## II. ANALYSIS

We review a circuit court's use of its contempt power for erroneous exercise of discretion. *See Krieman v. Goldberg*, 214 Wis. 2d 163, 169, 571 N.W.2d 425, 428 (Ct. App. 1997). Underlying discretionary determinations may be findings of fact and conclusions of law. *See Michael A.P. v. Solsrud*, 178 Wis. 2d 137, 153, 502 N.W.2d 918, 925 (Ct. App. 1993). We will not overturn findings of fact unless they are clearly erroneous. Section 805.17(2), STATS. In contrast, we review questions of law de novo. *See Michael A.P.*, 178 Wis. 2d at 147, 502 N.W.2d at 922.

A person may be held in contempt if he or she refuses to comply with an order made by a competent court. *See Krieman*, 214 Wis. 2d at 169, 571 N.W.2d at 428. The person may disagree with the order, but he or she is bound to obey it until relieved therefrom in some legally prescribed way. *See WERB v. Milk & Ice Cream Drivers & Dairy Empl. Union*, 238 Wis. 379, 400, 299 N.W. 31, 41 (1941). Accordingly, we first consider whether the circuit court erred by concluding that John complied with the amended judgment.

Faye argues that the circuit court erred by finding the extrajudicial oral modification consistent with the amended judgment, thereby avoiding the mandates of § 767.32(1m), STATS., and the holding in *Douglas County*. She contends that the oral agreement, which she claims "eliminated child support payments altogether," is inconsistent with the amended judgment and is thus a retroactive revision of a judgment prohibited by § 767.32(1m). John counters that there is no arrearage because he made the payments required by the amended judgment. Such payments complied with the amended judgment, he argues, because the judgment provided that he and Faye could make all

payments directly without involving the clerk of court's office. Additionally, he contends that their oral modification was consistent with the amended judgment and that he therefore complied with it.

To determine whether the parties' extrajudicial oral agreement complied with the amended judgment, we must interpret the amended judgment. The interpretation of a divorce judgment is a question of law we decide de novo. *See Levy v. Levy*, 130 Wis. 2d 523, 528–29, 388 N.W.2d 170, 172–73 (1986).

The original divorce judgment required that John pay Faye $500 per month in child support through income assignment, that John provide the children with health insurance, and that John and Faye split the children's uninsured medical expenses. The amended judgment provides that "[a]ll payments ... be made directly by John . . . and Faye . . . without the involvement of the Clerk of Court's Office." While the amended judgment allows the parties to pay each other directly, rather than through the clerk of court's office,[6] this is simply a change of payment method, not a change in the amount of money for which the parties are responsible. Further, the amended judgment requires direct payment to either Faye or John and does not provide for direct payment to their children or third parties.

Based on our interpretation of the amended judgment, we conclude that the circuit court erred when it determined that, because the extrajudicial oral agreement was consistent with the amended judgment, John was in compliance. First, the record reflects and John concedes that from 1993 to 1997, he expended an aver-

_____

[6] *See* note 3.

age of $448 per month for the children. The judgment required John to pay $500 per month in cash, not an average of $448. Thus, the circuit court's finding that John complied with the amended judgment is clearly erroneous. *See* § 805.17(2), STATS. Second, the list of expenditures from which the $448 per month was calculated reflects that from 1993 to 1997, John paid a total sum of $500 directly to Faye; many of the listed expenses were for the children's clothing, school activities, recreation, and medical expenses. Accordingly, because the judgment provides only for direct cash payments to Faye, the circuit court erred when it concluded that John fully complied with the judgment by making cash and non-cash payments directly to the children and third parties.

Next, given that John did not comply with the amended judgment, we must address whether § 767.32(1m) and (1r), STATS., set forth *infra*, allow the circuit court to modify the amended judgment and credit John for the direct payments he made to his children and third parties that do not comply with the amended judgment. Faye contends that under § 767.32(1r), STATS., amended effective June 25, 1998, a court may not modify or credit an existing child support arrearage except as specifically provided in subsec. (1r). She argues that § 767.32(1r) specifically outlines when " 'equitable estoppel' type credit is possible." By contrast, John maintains that neither § 767.32(1m) nor (1r), STATS., prohibit the court from recognizing direct payments a payor makes on the child's behalf to an ex-spouse, child, or third party. Further, John insists that under *Schulz* and *Harms*, the court may enforce an extrajudicial agreement for child support under the doctrine of equitable estoppel. We agree with Faye that

127

§ 767.32(1r) now limits the circuit court's discretion to grant such credits.

Before 1993 Wis. Act 481, a circuit court had discretion to grant equitable credit for direct expenditures made other than as prescribed in the judgment if the judgment had been entered before August 1987. *See Schulz*, 155 Wis. 2d at 603–04, 456 N.W.2d at 323; *Rummel v. Karlin*, 167 Wis. 2d 400, 402–03, 481 N.W.2d 695, 697 (Ct. App. 1992). In *Douglas County*, 200 Wis. 2d at 812–13, 547 N.W.2d at 803, we construed 1993 Wis. Act 481, §§ 118 and 119, in which the legislature amended § 767.32(1m), STATS., and in which the legislature added the following underlined language:

> In an action under sub. (1) to revise a judgment or order with respect to child support, maintenance payments or family support payments, the court may not revise the amount of child support, maintenance payments or family support payments due, *or an amount of arrearages in child support, maintenance payments or family support payments that has accrued,* prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

1993 Wis. Act 481, § 118. Further, the legislature created § 767.32(1r), STATS., to provide:

> In an action under sub. (1) to revise a judgment or order with respect to child support or family support, *the court may not grant credit to the payer against support due prior to the date on which the action is commenced for payments made by the payer on behalf of the child* other than payments made to the clerk of court under s. 767.265 or 767.29 or as otherwise ordered by the court.

1993 Wis. Act 481, § 119 (emphasis added).

We held that read together, § 767.32(1m) and (1r), STATS., "unambiguously provide that a trial court cannot grant credit for direct payments for support made in a manner other than that prescribed in the order or judgment providing for support." *Douglas County*, 200 Wis. 2d at 813, 547 N.W.2d at 803–04. Further, we pointed out that the new law (1993 Wis. Act 481, §§ 118, 119) applied retroactively; thus, as of June 11, 1994, a court had no discretion to grant credits against support arrearages regardless of when the judgment or order was entered. *Id.* at 813, 547 N.W.2d at 804. Because the parties in *Douglas County* did not address whether equitable estoppel could apply to the method in which the payer made his payments, we did not address that issue.

While § 767.32(1m), STATS., has remained unchanged since 1993 Wis. Act 481, § 118, our legislature recently amended § 767.32(1r), STATS. In 1997 Wis. Act 273, the legislature amended and renumbered § 767.32(1r), and created § 767.32(1r)(b)–(f) to provide, in pertinent part:

> 767.32(1r) (intro.) In an action under sub. (1) to revise a judgment or order with respect to child support or family support, *the court may grant credit to the payer against support* due prior to the date on which the petition, motion or order to show cause is served for payments made by the payer other than payments made as provided in s. 767.265 or 767.29 in any of the following circumstances:
>
> . . . .
>
> (b) The payer shows by documentary evidence that the payments were made directly to the payee by check or money order, and shows by a preponderance of the evidence that the payments were

intended for support and not intended as a gift to or on behalf of the child, or as some other voluntary expenditure, or for the payment of some other obligation to the payee.

. . . .

(c) The payer proves by clear and convincing evidence, with evidence of a written agreement, that the payee expressly agreed to accept the payments in lieu of child or family support paid as provided in s. 767.265 or 767.29, not including gifts or contributions for entertainment.

. . . .

(d) . . . .

. . . .

(e) The payer proves by a preponderance of the evidence that the child lived with the payer . . . for more than 60 days . . . .

. . . .

(f) The payer proves by a preponderance of the evidence that the payer and payee resumed living together with the child . . . . (Emphasis added.)

To determine whether § 767.32(1r), STATS., eliminates the defense of equitable estoppel, we must engage in statutory interpretation. Construction of a statute or its application to a particular set of facts is a question of law we review de novo. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). In determining a statute's meaning, our goal is to ascertain the legislature's intent. *In re Peter B.*, 184 Wis. 2d 57, 70–71, 516 N.W.2d 746, 752 (Ct. App. 1994). To make this determination, we look to the statute's plain language. *See id.* If the statute is plain on its face, our inquiry ends, and we must simply apply the statute to our case's facts. *Id.*

The court's authority to grant John credit derives from § 767.32(1), STATS. *See Douglas County*, 200 Wis. 2d at 814, 547 N.W.2d at 804. When we decided *Douglas County*, § 767.32(1r), STATS., prohibited a court from granting credit. *See id.* Now, however, we conclude that § 767.32(1r)'s plain and unambiguous language, as modified in 1997 Wis. Act 273, permits a court to grant credit to a payer against support due on the date on which the motion for payment is served, but only under the limited circumstances enumerated in § 767.32(1r)(b)–(f).

Nevertheless, John contends that under *Harms* and *Schulz*, equitable estoppel applies, even considering § 767.32(1m) and (1r), STATS., and that *Jacquart v. Jacquart*, 183 Wis. 2d 372, 515 N.W.2d 539 (Ct. App. 1994), permits the parties to contract regarding support issues. Significantly, *Harms*, *Schulz*, and *Jacquart* were decided before our legislature modified subsec. (1r) in 1997 Wis. Act 273. Section 767.32(1r) represents a modification to the common law as set forth in *Harms* and *Schulz*, and while statutes in derogation of the common law must be narrowly construed, *Hainz v. Shopko Stores, Inc.*, 121 Wis. 2d 168, 175, 359 N.W.2d 397, 401 (Ct. App. 1984), that does not mean "the court is to struggle to defeat the purposes of the legislature." *Heiden v. Milwaukee*, 226 Wis. 92, 101, 275 N.W. 922, 926 (1937). Moreover, the legislature is presumed to know the case law in existence at the time it enacts legislation. *See Carol J.R. v. County of Milwaukee*, 196 Wis. 2d 882, 888, 540 N.W.2d 233, 235 (Ct. App. 1995). Here, the statute clearly and unambiguously establishes the circumstances under which the circuit court may grant credit, and our inquiry regard-

ing legislative intent must end. *See In re Peter B.*, 184 Wis. 2d at 70–71, 516 N.W.2d at 752.

Further, the legislature expressly intended the new law to apply retroactively. In 1997 Wis. Act 273, § 10 provides: "**Initial applicability**. This act first applies to arrearages existing and child or family support payments past due on the effective date of this subsection [June 25, 1998], regardless of when the judgment or order under which the arrearages accrued or the child or family support is owed was entered."[7] The circuit court's judgment was filed on July 9, 1998. Under the Act's unambiguous language, § 767.32(1r)(b)–(f) applies, and a circuit court may grant credit only under the enumerated limited circumstances regardless of when the judgment was entered.

We recognize that John implies that this result is inequitable given that the circuit court specifically found the parties had agreed to the extrajudicial oral agreement providing for direct payment to the children and third parties. However, because § 767.32(1m) and (1r), STATS., preclude recognition of these payments except when the enumerated circumstances of § 767.32(1r)(b)–(f) are met, John's right to receive credit for these direct payments is limited. Moreover, John could have sought modification of the amended judgment, but did not. *See* § 767.32, STATS. The legislature's amendment to § 767.32(1r), when read in conjunction with § 767.32(1m), compels this result.

██

Consequently, we are satisfied that equitable estoppel does not apply and that credit against child support may only be permitted as the legislature has

---

[7] 1997 Wis. Act 273 repealed 1997 Wis. Act 27, § 5031, which had amended § 767.32(1r) with a deferred effective date.

determined under § 767.32(1r)(b)–(f). Thus, we remand this case to the circuit court for its determination of whether any of the subsections permit credit to John against support due before the date Faye served John with the contempt motion. If the court determines John is entitled to such credits, it should compute the arrearage due, if any, as well as any statutory interest under § 767.25(6), STATS.

*By the Court.*—Judgment reversed and cause remanded with directions.