In re the Paternity of John R. B.:

Barbara B., Petitioner-Respondent,

v.

Dorian H., Respondent-Appellant-Petitioner.

Supreme Court

No. 03–1877. *Oral argument November 9, 2004.—Decided January 20, 2005.*

2005 WI 6

(Also reported in 690 N.W.2d 849.)

For the respondent-appellant-petitioner there were briefs by *Renee E. Mura* and *Renee E. Mura, S.C.,* Kenosha, and oral argument by *Renee E. Mura.*

For the petitioner-respondent there was a brief by *Barbara J. Beardsley,* and oral argument by *Barbara J. Beardsley.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. Because we conclude that retroactive applications of Wis. Stat. § 767.32(1m) and (1r) (2000–01)[1] do not violate Dorian H.'s (Dorian) right to due process, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 2. In 1982, Dorian and Barbara B. (Barbara) entered into a stipulation that formed the basis of a

---

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

paternity judgment and child support order. The parties stipulated that Dorian was the father of John R.B. (John), born November 8, 1979, and that Dorian would make a payment of $30.00 per week to the clerk of court for John's support. This case arises out of an Order to Show Cause filed by Barbara on April 9, 2001 in Kenosha County Circuit Court, alleging that Dorian violated the 1982 child support order.[2] The Kenosha County Child Support Agency determined that Dorian owes $24,690.00 in child support arrearages and $42,612.90 in interest.

¶ 3. On December 21, 2001, Family Court Commissioner James E. Fitzgerald held an evidentiary hearing, at which both Barbara and Dorian testified. In a written order dated January 21, 2002, the commissioner found that Dorian had not made any child support payments since 1983, but that Dorian had paid John's tuition while John was still a child and attending a private school. The commissioner additionally found that "there was an agreement made between the parties that the mother would not pursue child support in return for the father not having visitation with the child." The commissioner decided that Barbara was "not allowed to recoup the past child support money, as the child is now an adult, and she did not seek such payments while the child was a minor. Equity now demands that [Dorian] not be held to this large amount of child support and arrearages." The commissioner

---

[2] Wisconsin Stat. § 893.415(2) (2003–04) provides that "[a]n action to collect child . . . support owed . . . shall be commenced within 20 years after the youngest child for whom the support was ordered under the judgment or order reaches the age of 18 or, if the child is enrolled full-time in high school or its equivalent, reaches the age of 19."

ordered Barbara estopped from pursuing past child support and denied her request for payment of the child support arrearages.

¶ 4. Barbara sought review in circuit court. There, the Honorable Barbara A. Kluka conducted a de novo review of the evidence that had been presented to the commissioner. In an oral decision, the court found that there "was some type of an agreement between [Barbara] and [Dorian] with respect to the payment of child support, visitation issues, and the child's attending [a private school]" and that Dorian directly paid the private school $800 a year through John's sixth grade year. The court concluded that application of the doctrine of equitable estoppel is inappropriate under existing Wisconsin law, specifically Wis. Stat. § 767.32(1r) and the court of appeals decision in *Monicken v. Monicken,* 226 Wis. 2d 119, 593 N.W.2d 509 (Ct. App. 1999). The court explained in its oral decision that Dorian did not meet any of the criteria listed in § 767.32(1r) that would allow credit against a child support arrearage and further determined that retroactive application of § 767.32(1r) is not unconstitutional.

¶ 5. While both the court commissioner and the circuit court found that Barbara and Dorian had an agreement regarding Dorian's child support obligations, neither made a finding as to when that agreement was reached. Dorian, however, alleges that the parties entered into the extrajudicial agreement in 1983.

¶ 6. Dorian appealed to the court of appeals, and the court of appeals affirmed the circuit court decision. Dorian then filed a petition for review, which we granted.

## II. DISCUSSION

¶ 7. Dorian argues that it violates his right to due process under the state and federal constitutions to retroactively apply Wis. Stat. § 767.32(1m) and (1r) instead of the law that was in place at the time he alleges that he and Barbara entered into the extrajudicial agreement.

### A. Standard of Review

■

¶ 8. Whether the retroactive application of a statute violates due process is a question of law that we review de novo. *Neiman v. American Nat'l Prop. and Cas. Co.,* 2000 WI 83, ¶ 8, 236 Wis. 2d 411, 613 N.W.2d 160.

### B. Revision of Child Support Arrearages

¶ 9. In 1983, the year Dorian alleges that the parties entered into the extrajudicial agreement, the circuit court had the discretion to revise a child support arrearage upon a showing of cause or justification. *Schulz v. Ystad,* 155 Wis. 2d 574, 593, 598, 456 N.W.2d 312 (1990) (noting this discretionary power of the circuit courts prior to the enactment of Wis. Stat. § 767.32(1m) in 1987);[3] *see Rust v. Rust,* 47 Wis. 2d 565,

---

[3] 1987 Wis. Act. 27 created Wis. Stat. § 767.32(1m), which provided that "[i]n an action . . . to revise a [child support judgment] . . . the court may not revise the amount of child support . . . payments due . . . except to correct previous errors in calculations." 1987 Wis. Act. 27, § 2135i. The court in *Schulz v. Ystad,* 155 Wis. 2d 574, 456 N.W.2d 312 (1990), held that this statute applied prospectively, but that legal principles in place prior to the statute coming into effect applied where child

570–73, 177 N.W.2d 888 (1970)[4] (upholding circuit court's cancellation of arrearages because the findings in the underlying child support order had been incomplete); *Foregger v. Foregger,* 40 Wis. 2d 632, 641–43, 162 N.W.2d 553 (1968)[5] (upholding offset of duplicative child support payments against arrearages). Subsequent to 1983, when the oral modification of support allegedly occurred, Wisconsin appellate courts addressed whether a child support payer was entitled to credit based on expenditures made on the child's behalf and whether an extrajudicial agreement between a child support payer and payee was enforceable.

¶ 10. Whether a child support payer is entitled to credit against court-ordered child support was addressed in 1984, in *Hirschfield v. Hirschfield,* 118 Wis. 2d 468, 347 N.W.2d 627 (Ct. App. 1984), where the court of appeals held that "a parent ordered to pay child support is not entitled to credit for voluntary expenditures for the child not made in the manner specifically ordered." *Id.* at 470–71. However, in 1990, we carved out two exceptions to the *Hirschfield* rule. *Schulz,* 155 Wis. 2d at 603–04. We identified two circumstances "of an equitable nature," *id.* at 602, under which the payer's direct expenditures made for a child may be credited: (1) "under compulsion of circumstances" or (2) "with express or implied consent of the custodial parent." *Id.* at 604. Circuit courts were further instructed

support arrearages had accrued pursuant to an order entered before the statute's effective date of August 1, 1987. *Id.* at 598–99.

[4] *Rust v. Rust,* 47 Wis. 2d 565, 177 N.W.2d 888 (1970), is cited for historical background, not as current precedent.

[5] *Foregger v. Foregger,* 40 Wis. 2d 632, 162 N.W.2d 553 (1968), is cited for historical background, not as current precedent.

to allow credit under these two circumstances only where "manifest injustice" would otherwise result and where a particularized burden of proof, outlined within the decision, was met. *Id.*

¶ 11. It was not until April 1993, in *Harms v. Harms,* 174 Wis. 2d 780, 498 N.W.2d 229 (1993), that the issue, whether parties' extrajudicial agreement could be enforced against a custodial parent seeking payment of child support arrearages, was addressed by a Wisconsin appellate court. In *Harms,* the custodial parent sent the child support payer a letter "informing him that she had moved the children to the state of Florida and that she no longer expected him to pay child support or hospital insurance," *id.* at 782, and as a result of the letter, the child support payer stopped paying child support, *id.* The custodial parent subsequently brought a contempt motion due to the cessation of child support payments, but we determined that the extrajudicial agreement between the parties was enforceable. *Id.* at 785. Citing the doctrine of equitable estoppel, we held for the child support payer. *Id.*[6]

¶ 12. However, later in 1993, Wis. Stat. § 767.32(1r) was created, which provided:

> In an action . . . to revise a judgment or order with respect to child support or family support, *the court may not grant credit to the payer against support due* prior to the date on which the action is commenced for payments made by the payer on behalf of the child *other than payments made to the clerk of court* under s. 767.265 or 767.29 or as otherwise ordered by the court.

---

[6] *Harms v. Harms,* 174 Wis. 2d 780, 498 N.W.2d 229 (1993), is cited for historical background, not as current precedent.

1993 Wis. Act 481, § 119 (emphasis added). The same legislative act amended § 767.32(1m), which as amended provided:

> In an action . . . to revise a judgment or order with respect to child support . . . *the court may not revise the amount of child support . . . due, or an amount of arrearages in child support . . . that has accrued,* prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

1993 Wis. Act. 481, § 118 (emphasis added).

¶ 13. Wisconsin Stat. § 767.32(1m) initially was created by 1987 Wis. Act 27, § 2135i, but we construed it to apply only prospectively, so that a child support arrearage that had accrued pursuant to an order entered prior to August 1, 1987 was unaffected by the new statute. *Schulz,* 155 Wis. 2d at 598–99.[7] However, 1993 Wis. Act. 481 brought an explicit reference to child support arrearages to § 767.32(1m), 1993 Wis. Act. 481, § 118, and also required courts to apply both § 767.32(1m) and (1r) "regardless of when the judgment or order under which the arrearages accrued, or the child support . . . payments are owed, was entered," 1993 Wis. Act. 481, § 9326.

¶ 14. In *Douglas County Child Support Enforcement Unit v. Fisher,* 200 Wis. 2d 807, 547 N.W.2d 801 (Ct. App. 1996), the court of appeals explained that pursuant to Wis. Stat. § 767.32(1m) and (1r), as respectively amended and created by 1993 Wis. Act. 481, circuit courts "cannot grant credit for direct payments for support made in a manner other than that prescribed in the order or judgment providing for support." *Id.* at 813. The *Fisher* court further held that this new

---

[7] *See supra* note 3.

law applies retroactively, so that as of its effective date, June 11, 1994, "a court is without discretion to grant credits against arrearages regardless of when the judgment or order was entered." *Id.* at 814; *accord Monicken,* 226 Wis. 2d at 129.

¶ 15. More latitude to grant a child support payer credit against an arrearage came in 1997, when the legislature amended Wis. Stat. § 767.32(1r). As amended the subsection provided:

> *the court may grant credit to the payer* against support due prior to the date on which the petition, motion or order to show cause is served for payments made by the payer other than payments made as provided in s. 767.265 or 767.29, *in any of the following circumstances* . . . .

1997 Wis. Act 273, § 1 (emphasis added). The legislature then enumerated the circumstances under which such credit could be granted in newly created § 767.32(1r)(b)-(f).[8] 1997 Wis. Act. 273, §§ 3–7. In *Monicken,* the court of appeals made clear that the revised § 767.32(1r) changed the law regarding the granting of credit to child support payers who were in arrears, superceding the *Harms* and *Schulz* holdings on that point. *Monicken,* 226 Wis. 2d at 130–31. Based on 1997 Wis. Act 273, § 10,[9] the *Monicken* court also held that the 1997 changes to § 767.32 apply retroactively. *Id.* at

---

[8] Wisconsin Stat. § 767.32(1r) and (1m) are unchanged in the 2001–02 version in all material respects from those effective June 25, 1998.

[9] 1997 Wis. Act. 273, § 10 provided, "**Initial applicability.** (1) This act first applies to arrearages existing and child or family support payments past due on the effective date of this subsection, *regardless of when the judgment or order under*

131–32. Therefore, after the law's effective date, which the legislature set at June 25, 1998, a circuit court is permitted to grant credit against child support arrearages pursuant only to the limited circumstances enumerated in § 767.32(1r)(b)-(f), regardless of when the underlying child support order was entered. *Id.* at 131–32.

¶ 16. Dorian does not contest the circuit court's conclusion that none of the circumstances allowing credit against a child support arrearage under Wis. Stat. § 767.32(1r) was met here.[10] Rather, Dorian argues that the retroactive applications of § 767.32(1r) and (1m), which limit a circuit court's power to grant him credit against child support due, violate his right to

*which the arrearages accrued or the child or family support is owed was entered."* (Emphasis added.)

[10] Wisconsin Stat. § 767.32(1r)(b) provides that a circuit court may grant credit where:

> [t]he payer shows by documentary evidence that the payments were made directly to the payee by check or money order, and shows by a preponderance of the evidence that the payments were intended for support and not intended as a gift to or on behalf of the child, or as some other voluntary expenditure, or for the payment of some other obligation to the payee.

In the circuit court's oral decision, it noted that this statutorily enumerated circumstance was not met. The circuit court also referenced the language of § 767.32(1r)(c), which provides for granting credit where:

> [t]he payer proves by clear and convincing evidence, with evidence of a written agreement, that the payee expressly agreed to accept the payments in lieu of child or family support paid as provided in s. 767.265 or 767.29 not including gifts or contributions for entertainment.

The circuit court explained in its oral decision that this circumstance was also not met, as there was no written agreement.

due process under Article I, § 1 of the Wisconsin Constitution and the Fourteenth Amendment to the United States Constitution. We disagree.

## C. Due Process and Retroactive Legislation

¶ 17. Retroactive legislation is presumed constitutional. *Neiman,* 236 Wis. 2d 411, ¶ 16. It is the challenger's burden to overcome that presumption, *Martin v. Richards,* 192 Wis. 2d 156, 200, 531 N.W.2d 70 (1995), by demonstrating the statute's unconstitutionality beyond a reasonable doubt, *Matthies v. Positive Safety Mfg. Co.,* 2001 WI 82, ¶ 26, 244 Wis. 2d 720, 628 N.W.2d 842.

¶ 18. We have determined that the due process clauses of Article I, § 1 of the Wisconsin Constitution[11] and the Fourteenth Amendment to the United States Constitution are substantially equivalent.[12] *Neiman,* 236 Wis. 2d 411, ¶ 8; *Martin,* 192 Wis. 2d at 198 n.6. The Fourteenth Amendment of the Constitution in pertinent part provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In arguing that retroactive applications of Wis. Stat. § 767.32(1m)

---

[11] Article I, § 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

[12] This court has also said that it "will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin . . . require[s] that greater protection of citizens' liberties ought to be afforded." *See State v. Doe,* 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977).

and (1r) are unconstitutional, the particular right Dorian appears to be asserting is the right not to be deprived of property,[13] without due process of law.[14]

¶ 19. As the parties correctly note, this court adopted a balancing test to determine whether a retroactive statute comports with due process. *Martin,* 192 Wis. 2d at 201. The *Martin* balancing test examines whether the retroactive statute has a rational basis,[15] *Matthies,* 244 Wis. 2d 720, ¶ 27; *Neiman,* 236 Wis. 2d

---

[13] Dorian asserts that his "economic viability" and his "ability . . . to freely contract with others" are affected. (Pet. Br. at 15.)

[14] Dorian does not explain whether he believes the retroactive applications of these statutes violate his right to substantive due process or to procedural due process. The right to substantive due process "protects against governmental actions that are arbitrary and wrong 'regardless of the fairness of the procedures used to implement them,' " *Monroe County Dep't of Human Servs. v. Kelli B.,* 2004 WI 48, ¶ 19, 271 Wis. 2d 51, 678 N.W.2d 831 (citation omitted), whereas procedural due process addresses the fairness of the manner in which a governmental action is implemented, *State v. Laxton,* 2002 WI 82, ¶ 10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784 (citation omitted). Dorian is not arguing that the procedure applied in his case was unfair. Instead, he is arguing that it is unfair to apply Wis. Stat. § 767.32(1m) and (1r) retroactively because he believes that it is wrong to apply those substantive rules to his case in light of the law that he alleges had previously been in place. *See Schulz,* 155 Wis. 2d at 598. Thus, it appears that Dorian is asserting a substantive due process claim, rather than a procedural due process claim.

[15] The United State Supreme Court has explained that, for the purpose of due process, the retroactive application of legislation must be justified by a rational, as opposed to arbitrary and irrational, purpose. *Pension Benefit Guar. Corp. v. R.A. Gray Co.,* 467 U.S. 717, 729–30, 104 S. Ct. 2709 (1984).

411, ¶ 9, requiring a reviewing court to "weigh the public interest served by the retroactive statute against the private interests that are overturned by it," *Martin,* 192 Wis. 2d at 201 (citation omitted). "Implicit within this analysis is a consideration of the unfairness created by the retroactive legislation." *Id.* (citation omitted).

¶ 20. However, our precedent instructs us to determine first whether application of the statute in question to the party challenging the statute actually has a retroactive effect, *Matthies,* 244 Wis. 2d 720, ¶ 19, *Neiman,* 236 Wis. 2d 411, ¶ 14; *see Martin,* 192 Wis. 2d at 199–200, an inquiry that turns on whether the right is "vested," *Matthies,* 244 Wis. 2d 720, ¶¶ 21–23; *see Neiman,* 236 Wis. 2d 411, ¶ 14. As noted in *Neiman,* "[t]he concept of vested rights is 'conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute.' " *Neiman,* 236 Wis. 2d 411, ¶ 14 (citation omitted). Only upon concluding that the statute in question "retroactively affects a substantive right that accrued before the passage of the legislation," do we proceed with the *Martin* balancing test. *Matthies,* 244 Wis. 2d 720, ¶ 27.

¶ 21. As discussed above, in 1983 the circuit court had discretion to make a revision if cause or justification was shown, but it had no obligation to do so. *See supra* Section II.B. In 1982, Dorian was ordered to pay child support. The circuit court's discretionary power to reduce or cancel Dorian's arrearages at a particular point in time after that did not vest a right in him to have the arrearages reduced or cancelled. *Woodmansee v. Woodmansee,* 151 Wis. 2d 242, 248–49, 444 N.W.2d 393 (Ct. App. 1989) (citing *Miller v. Miller,* 67 Wis. 2d 435, 448, 227 N.W.2d 626 (1975)).

¶ 22. However, because neither party argued that Dorian did not have a vested right, we will assume he did have a vested right and turn to applying the *Martin* test. We begin by considering the public interest served by retroactive applications of Wis. Stat. § 767.32(1m) and (1r). The retroactive application of legislation must serve a public purpose that is " 'substantial, valid and intended to remedy a general economic or social issue.' " *Matthies,* 244 Wis. 2d 720, ¶ 31 (quoting *Neiman,* 236 Wis. 2d 411, ¶ 23).

■

¶ 23. In reviewing the steps the legislature took to arrive at the current formulations under Wis. Stat. § 767.32(1m) and (1r), we see that its first step in restricting a court's authority to revise past due child support amounts began with 1987 Wis. Act. 27, § 2135i. The revision was made on the recommendation of the Governor's Welfare Reform Commission ["the commission"]. Legislative Reference Bureau Drafting Record for 1987 Wis. Act. 27. The commission recommended implementing "a new federal requirement that prohibits retroactive adjustments to child support orders," Governor's Welfare Reform Commission, *Report on Recommendations of the Governor's Welfare Reform Commission* 13 (May 22, 1987), apparently referring to 42 U.S.C. § 666(a)(9)(C).[16] The State may have risked

---

[16] 42 U.S.C. § 666 provides that "each State must have in effect laws requiring . . . that any payment or installment of support under any child support order . . . is . . . not subject to retroactive modification," with one limited exception. 42 U.S.C.A. § 666(a), (a)(9)(C). The law was introduced in 1986. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99–509, § 9103, 100 Stat. 1874 (1986). *See generally* Lisa Dukelow, *Child Support in North Carolina: What is the State of the Law And How Did We Get Here?,* 22 N.C. Cent. L.J. 14, 18 (1996); Aaron

jeopardizing its eligibility for certain federal funds if it had not complied. *See Schulz,* 155 Wis. 2d at 594–95; *Woodmansee,* 151 Wis. 2d at 246–47. As one commentator has summarized the pertinent legislative history,

> the Commission and the Legislature (1) were concerned about the loss of federal . . . funds; (2) wanted to reduce the welfare budget by having non-custodial parents (instead of the state) support their children; and (3) wanted to protect custodial parents from having to return child support payments should the support order later be reduced.

Aaron Bransky, *An Unfortunate Change of Circumstances: Wisconsin Prohibits Retroactive Revision of Child Support Orders,* 1988 Wis. L. Rev. 1123, 1138.

¶ 24. Further restriction on retroactive modification of child support arrearages was passed in 1993, which prohibited credit to the obligor against child support arrearages, 1993 Wis. Act. 481, § 119, regardless of when the underlying child support order was entered, *id.* at § 9326. These amendments were also intended to bring Wisconsin into compliance with federal law. Legislative Reference Bureau Drafting Record for 1993 S.B. 44.[17] Prior to the 1993 statutory changes, the court of appeals had recognized the soundness of a rule prohibiting credit against an arrearage for voluntary expenditures made in a manner not specifically ordered, noting that "[a]llowing credit for such payments or expenditures would condone the unilateral

Bransky, *An Unfortunate Change of Circumstances: Wisconsin Prohibits Retroactive Revision of Child Support Orders,* 1988 Wis. L. Rev. 1123, 1135–38.

[17] Language essentially identical to May 1994 Senate Bill 2, §§ 118–19, 9326, which created 1993 Wis. Act 481, §§ 118–19, 9326, (2), was earlier considered by the legislature in 1993 Senate Bill 44, §§ 3637–38, 9326(2g)(b).

modification of court orders and interference with the custodial parent's right to decide how support money should be spent." *O'Brien v. Freiley,* 130 Wis. 2d 174, 181, 387 N.W.2d 85 (Ct. App. 1986) (citing *Hirschfield,* 118 Wis. 2d at 471). After the 1993 statutory changes, the court of appeals explained that the amendments apparently were based on a public policy determination that "the public interest in addressing the problem of nonpayment of child support is best served by limiting payments to those made in accordance with the divorce judgment. This policy fixes arrearages with certainty and facilitates the determination as to who owes arrearages and what amount." *Fisher,* 200 Wis. 2d at 815.

¶ 25. Then, in 1997, the Family Law Section of the State Bar of Wisconsin recommended language that it believed both complied with federal law and was fair, allowing credit to be granted a child support obligor under specifically articulated circumstances. Legislative Reference Bureau Drafting Record for 1997 Wis. Act. 273. The State Bar's proposal served as the foundation for 1997 Wis. Act. 273, which allowed credit to be granted under carefully described circumstances. *See id.;* 1997 Wis. Act 273 §§ 1–7.

¶ 26. In sum, the retroactive application of Wis. Stat. § 767.32(1m), which generally forbids modification of past due child support, serves: (1) the general public purpose of financially providing for children; (2) the more particular and corollary purpose of requiring parents, rather than the State, to provide financial support for their children; and (3) the pragmatic goal of securing federal funds for the State via compliance with federal law.

¶ 27. The retroactive application of Wis. Stat. § 767.32(1r), which allows a child support payer to be granted credit only under specifically enumerated cir-

cumstances, was also enacted to maintain the State's eligibility for certain federal funds, but further recognizes the public's interest in having changes to child support arrangements be supervised by a court, so that children's needs are met as fully as possible by their parents.

¶ 28. Having considered the public interest served by Wis. Stat. § 767.32(1m) and (1r), in accordance with the *Martin* test, we next consider the private interest affected. Of primary concern is whether the retroactive statute unfairly overturns the challenger's settled expectation in any accrued rights. *Schultz v. Natwick,* 2002 WI 125, ¶ 26, 257 Wis. 2d 19, 653 N.W.2d 266; *Matthies,* 244 Wis. 2d 720, ¶¶ 42–43; *Neiman,* 236 Wis. 2d 411, ¶¶ 20, 22. Consistent with that concern, we also consider whether the statute's challenger had reasonably relied on prior law. *Neiman,* 236 Wis. 2d 411, ¶ 21.

¶ 29. As noted earlier, Dorian contends that his right to due process, that is, the right not to be deprived by the State of life, liberty, or property without due process of law, is violated here. At stake, according to Dorian, is his private interest in property, specifically his economic viability and his ability to contract freely.

¶ 30. Although the total amount Dorian will have to pay in order to satisfy the child support arrearages, plus interest, is considerable, we conclude that in light of the circumstances, his private interest in property here is weak. Dorian's obligation to pay $30 a week in child support to the county clerk was explicit in the 1982 court order. Wisconsin Stat. § 767.32 provided Dorian the opportunity to return to court and request a

modification of the order.[18] He chose not to do so. Instead, he waited until he was called into court to pay the arrearages.

¶ 31. Dorian argues that his extrajudicial agreement with Barbara subsequent to the 1982 order was enforceable at the time of its creation, which he alleges was in 1983. However, as discussed above, the prevailing law in 1983 regarding revision of child support arrearages was that the circuit court had discretion to make a revision if cause or justification was shown. *See supra* Section II.B. As all that Dorian had to rely on under prior law was the court's discretionary power, Dorian's expectation that he could successfully enforce his extrajudicial agreement with Barbara regarding child support was far from settled.[19]

¶ 32. In sum, we conclude that Dorian has not established beyond a reasonable doubt that retroactive applications of Wis. Stat. § 767.32(1m) and (1r) violate his right to due process. Balancing the public's interest against Dorian's private interest, we weigh the public interest as more substantial. Retroactive applications of § 767.32(1m) and (1r) serve significant public purposes, while remedying general social and economic issues. Any expectations Dorian may have had regarding his child support obligation were not well-founded in the law, and moreover, throughout these proceedings, Dorian has never asserted that he was unable to pay $30/week in support or that John had no need for his financial support. Accordingly, his private interest in

---

[18] In the current codification, such a request would be filed pursuant to Wis. Stat. § 767.32(1)(a).

[19] In their briefs, the parties did not argue whether the agreement between Dorian and Barbara was enforceable under the Statute of Frauds. Wis. Stat. § 241.02(1). Accordingly, we do not address this issue.

property is weak. As the *Martin* analysis demonstrates, retroactive applications of § 767.32(1m) and (1r) are rational and do not violate state or federal constitutional due process provisions.[20]

## III. CONCLUSION

¶ 33. Because we conclude that retroactive applications of Wis. Stat. § 767.32(1m) and (1r) do not violate Dorian H.'s right to due process, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[20] Dorian makes two additional arguments that are without merit. First, he argues that retroactive applications of Wis. Stat. § 767.32(1m) and (1r) violate Article I, § 9 of the Wisconsin Constitution, which guarantees a "certain remedy in the laws for all injuries, or wrongs which [a person] may receive in his person, property, or character," Wis. Const. art. I, § 9. We agree with the court of appeals that this argument fails because the legislature has provided both a procedure and a forum that accommodate his concerns. *Barbara B. v. Dorian H.*, No. 03–1877, slip op. at 8–9 (Ct. App. Dec. 10, 2003). Dorian also urges us to adopt equitable remedies, such as equitable estoppel, to address the interest he has been ordered to pay on the child support arrearages. However, we are unpersuaded by these arguments because Dorian had the use of the funds that he should have paid to support his son, and the legislature has clearly articulated its policy determinations in Wis. Stat. § 767.25(6) regarding interest on child support arrearages. Further, the legislature has decided that the interest provided for in § 767.25(6) "shall," that is, must, accrue and be paid. *See State v. Douangmala*, 2002 WI 62, ¶ 31, 253 Wis. 2d 173, 646 N.W.2d 1 (holding that the word "shall" in a statute is generally presumed to be mandatory).