In re the Marriage of: William A. Wood,
Petitioner-Respondent,†

v.

Pamela A. Propeck, Respondent-Appellant.

Court of Appeals

*No. 2005AP2674. Submitted on briefs March 3, 2006.
—Decided January 25, 2007.*

2007 WI App 24

(Also reported in 728 N.W.2d 757.)

† Petition to review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Richard J. Auerbach* of *Auerbach & Porter*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Michael S. Heffernan* and *Allan R. Koritzinsky* of *Foley & Lardner, LLP*, Madison.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J. Pamela Propeck appeals an order that denied her motion to modify child support paid by her former husband, William Wood. She claims the circuit court erred in determining that she should be estopped from seeking the modification by the terms of a marital settlement agreement the parties had entered into at the time of their divorce. The parties had agreed that, absent "catastrophic circumstances," neither party could request a change in child support for the first seven years following their divorce. We conclude that our analysis and holding in *Ondrasek v.*

*Tenneson*, 158 Wis. 2d 690, 462 N.W.2d 915 (Ct. App. 1990), governs the present facts, and that, as in *Ondrasek*, the present agreement is against public policy and cannot give rise to estoppel. Accordingly, we reverse the appealed order and remand to the circuit court for further proceedings on Pamela's motion to modify child support.

## BACKGROUND

¶ 2. Pamela and William were divorced pursuant to a judgment entered in November 2000. The judgment awarded sole custody and primary placement of the couple's three children to Pamela. William received physical placement of the children for approximately one-third of the overnights in each year. At the time of their divorce, Pamela earned $10,416 per month and William $16,000. William was ordered to pay $4,000 per month in child support to Pamela.

¶ 3. The parties entered into a marital settlement agreement whose terms were incorporated into the divorce judgment. One of the provisions of the parties' agreement was the following:

> Neither party shall request a change in the amount of child support payments for a period of at least seven years from the date of the judgment entered herein, except as occasioned by catastrophic circumstances, specifically understood and agreed as being significantly greater than a substantial change in circumstances.

¶ 4. Several years after the divorce, William's periods of physical placement were significantly reduced from what he had been awarded in the divorce judgment. He concedes that he "now has limited, non-overnight placement with each of his three children." In

May 2005, Pamela moved for an increase in child support, asserting the following:

> 1. [Pamela] has primary placement of the parties' three minor children, with [William's] placement not meeting the threshold of a shared time payor.

> 2. It has been more than 33 months since support was established.

> 3. On information and belief, [William]'s income has significantly increased since the last child support order was entered such that his current support is not close to what would be required by application of [WIS. ADMIN CODE §] DWD 40.

> 4. The children are older and generally more expensive than they were at the time of the initial support order.

Pamela did not allege the existence of "catastrophic circumstances" in her motion to modify child support.

¶ 5. The circuit court initially concluded, on the basis of *Ondrasek*, that Pamela's motion should be heard notwithstanding her failure to allege catastrophic circumstances pursuant to the parties' agreement. William moved the court to reconsider, and it did. After additional briefing and argument, the court "dismissed" Pamela's motion to modify child support, concluding that she was "estopped" under the parties' agreement "from seeking a modification for anything less than a catastrophic circumstance." The court stated it would allow Pamela to "replead her motion" to allege catastrophic circumstances. Pamela did not replead and instead appeals the order dismissing her motion.

## ANALYSIS

¶ 6. Whether to apply the doctrine of estoppel based on the provisions of an agreement between

divorcing parties, when the underlying facts are undisputed, is a question of law; it is therefore a question we decide de novo. *See Patrickus v. Patrickus*, 2000 WI App 255, ¶ 6, 239 Wis. 2d 340, 620 N.W.2d 205.

¶ 7. Our resolution of the present dispute rests squarely on our analysis and holding in *Ondrasek*, 158 Wis. 2d at 690. We thus begin our present analysis by describing the facts in *Ondrasek* and our rationale for declaring the agreement of the parties in that case to be "against public policy." *See id.* at 692.

¶ 8. The parties in *Ondrasek* had two children when they divorced. *Id.* They entered into a marital settlement agreement calling for the father to make periodic payments to the mother, which payments included, among other things, child support. *Id.* at 693. The parties' agreement included the following provision:

> (If the youngest child) were to reside on a permanent basis with [father] . . . (the periodic payments) shall be reduced for that period by $5000.00 per year.
>
> . . . .
>
> [N]either party shall have the right to have the amount as established herein to be otherwise increased or decreased.

*Id.* Modification of the payments was permitted under the agreement, however, if the mother remarried, the mother's income exceeded a certain amount or the father became unable to work and his income fell below a certain amount. *See id.* at 693 n.2. Finally, the agreement noted that no part of the periodic payments were specifically designated as support, but that "the Court retains jurisdiction over child support." *See id.* at 693.

¶ 9. When the parties' youngest child changed placement from the father to the mother, the mother moved the court for child support. *Id.* at 694. The circuit court in *Ondrasek,* like the circuit court in this case, determined that the mother was estopped by the parties' agreement from seeking the modification she was requesting, concluding that she had "waived child support as long as she was receiving periodic payments." *Id.* We reversed. *Id.* at 692.

¶ 10. We concluded that the parties' agreement in *Ondrasek* could be interpreted as either a complete waiver of child support for the duration of the periodic payments or as placing a ceiling of $5,000 per year on child support, with no opportunity for the mother to seek a modification of the amount of child support. *See id.* at 694. We further concluded that the "effect of either interpretation is to prevent a hearing on the issue of whether there has been a change in circumstances requiring modification of child support obligations," and that "both interpretations violate public policy because under either one the child's best interests are not adequately protected." *Id.* We explained in our subsequent discussion that, in order to foster the public policy of protecting the best interests of children, the legislature had specified that the amount of child support should be "continually open" post-divorce to allow for "modification[s] for a change in circumstances unforeseen at the time the divorce judgment was entered." *Id.* at 695.

¶ 11. Our analysis in *Ondrasek* concluded with the following explanation of why public policy requires that a custodial parent be allowed to seek modification of child support despite a prior agreement to the contrary:

Even if the stipulation was fair when it was created, making a child support provision unmodifiable does not necessarily make the stipulation fair in the future. Provisions preventing future determination of the best interests of the child may leave the child inadequately protected. Unforeseen changed circumstances may require support beyond the amount of waived or stipulated child support.

Thus, the statutory goal of providing for the best interest of the child would be defeated if a party is precluded from seeking child support necessary for the best interests of the child. The public policy of protecting children requires that there be an opportunity to determine whether a change in circumstances warrants a modification of child support.

*Id.* at 696–97. Because the present agreement would also thwart the legislative directive that child support be subject to modification upon a showing of a "substantial change in circumstances," WIS. STAT. § 767.32(1)(a) (2003–04),[1] we conclude that, like the agreement in *Ondrasek*, the present agreement is contrary to public policy and cannot be relied on to preclude Pamela from bringing her present motion.[2]

¶ 12. William argues that his agreement with Pamela is quite different than the one we determined to be against public policy in *Ondrasek*. He points out that the present agreement is limited in duration (to the first seven years post-divorce); that it is reciprocal (in

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Before a "stipulation[] incident to a divorce decree" may give rise to estoppel, it must be shown, among other things, that "the overall settlement is . . . not illegal or against public policy." *Rintelman v. Rintelman*, 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984).

that William is bound to the same standard for seeking a child support reduction as Pamela must meet for an increase); and that, in any event, the agreement neither constitutes a complete waiver of future child support modifications, nor does it place a ceiling on the amount of support that may be awarded in the future. William argues that the legislature has already limited child support modifications to situations encompassing a "substantial change in circumstances," *see* Wis. Stat. § 767.32(1)(a), and he contends that he and Pamela have simply agreed to "additional limits" for seeking a modification. He would have us conclude that the provision at issue in this case is merely a stipulation by the parties to require a "heightened standard of proof," i.e., "catastrophic circumstances," instead of the statutory standard of a "substantial change in circumstances."

¶ 13. The flaw in William's argument, however, is this. The legislature, for the policy reasons we discussed in *Ondrasek*, has directed that child support modifications may be had upon a showing of a "substantial change in circumstances" of the parties or their children. *See* Wis. Stat. § 767.32(1)(a). The present agreement therefore constitutes a waiver of child support by Pamela—by its terms, Pamela waived any additional amount of child support she might be entitled to obtain, in the best interests of the children, upon a change of circumstances that is "substantial" but less than "catastrophic." Put another way, the provision at issue, if it were enforced, would prevent a court from considering whether a modification in child support should be ordered to ensure the children's best interests are protected when circumstances substantially change from those at the time of the divorce. The provision thus contravenes the legislative directive and is pre-

478

cisely what we said in *Ondrasek* that divorcing parties may *not* agree to. *See Ondrasek*, 158 Wis. 2d at 697 ("The public policy of protecting children requires that there be an opportunity to determine whether a change in circumstances warrants a modification of child support.").

¶ 14. William contends, however, that the present agreement is enforceable because, unlike the one in *Ondrasek* that contained exceptions that seemed to allow for only potential decreases in support, here, the exception is broader and applies to both parties equally. William asserts that "[t]he instant limitation allows both increases and decreases in support based on catastrophic circumstances [a]ffecting either or both parents or the children," which he claims is "broad enough to assure fairness to *both* parties *and* to protect the best interests of the children." We reach no conclusion regarding the "fairness" of the provision to each of the parties, a question we need not address. We conclude only that the "catastrophic circumstances" standard does *not* protect the best interests of the children because it potentially deprives them of a change in child support upon a substantial change in circumstances, which is when the legislature has directed that a modification may be requested.

¶ 15. William's argument in this regard suggests that our conclusion in *Ondrasek* that waivers of child support are against public policy must be limited to unilateral waivers of a payee's right to obtain increased child support. We reject such a suggestion. Our analysis in *Ondrasek* did not focus on the limited or one-sided nature of the exceptions the parties had agreed to. As William himself points out, we mentioned the exceptions only in a footnote and did not discuss them at all

in our analysis. *See Ondrasek*, 158 Wis. 2d at 693 n.2. We conclude that precluding both parties, instead of just one of them, from seeking a modification in support when circumstances change substantially does not result in an agreement that is consistent with the public policy reflected in WIS. STAT. § 767.32(1)(a). *See, e.g., Krieman v. Goldberg*, 214 Wis. 2d 163, 178, 571 N.W.2d 425 (Ct. App. 1997) ("To . . . subject a payor parent to an unreviewable stipulation for child support could jeopardize a payor parent's financial future, may have detrimental effects on the parent/child relationship and in this way would ultimately not serve the best interests of the child.").

¶ 16. Next, we note that William specifically disavows any argument that "the seven-year term saves the limited-modifiability child support provisions in this case." We agree with William's tacit concession that the parties' agreement to limit changes in child support to "catastrophic circumstances" for only a seven-year period does not provide a reason for us to uphold it. Even if William had so argued, we would not be persuaded that a court may overlook a violation of public policy that endures for "only" seven years simply because it is of limited duration.[3]

---

[3] We declined in *Krieman v. Goldberg*, 214 Wis. 2d 163, 571 N.W.2d 425 (Ct. App. 1997), to enforce an indefinite no-modification agreement against a child-support payor after concluding that "as a matter of public policy, no party can bind himself or herself to an absolute stipulation as to child support *with no time-limiting language*." *Id.* at 178 (emphasis added). We did not say in *Krieman*, however, that a time limit would have caused us to enforce the no-modification agreement in that case; rather, we simply described the provisions of the agreement before us and explained why those provisions were against public policy.

¶ 17. We also cannot accept William's suggestion that our analysis in *Krieman* somehow narrows the holding of *Ondrasek*. Before us in *Krieman* was an agreement that recited that the payor-parent's income "fluctuates on a monthly and yearly basis." *Id*. at 166–67. The parties agreed to an amount of child support that was based on the payor's agreed-upon "earning capacity" at the time of the divorce. *See id*. at 167. They also agreed that the amount of support would remain at that level regardless of the payor's future income and, further, that "neither party shall under any circumstances have the right" to seek a modification in the amount of support. *Id*. In reversing the trial court's order that was premised on the payor's being estopped by the agreement from seeking a reduction in child support, we explained that, under *Ondrasek*, regardless of the terms of the parties' agreement, the payee-parent could not be estopped from seeking an increase in child support upon a substantial change in circumstances. *See id*. at 177. We concluded that the payor-parent could likewise not be prevented by the parties' agreement from seeking a modification "due to a material change in circumstances." *Id*. at 178.

■

¶ 18. In our view, *Krieman* does not limit, and in fact reinforces, our conclusion in *Ondrasek* that any attempt to deprive a court of the ability to modify child support in the best interests of the children upon a showing of a substantial change in circumstances is against public policy. As noted, we applied the *Ondrasek* rationale in *Krieman* to relieve a child support payor from a no-modification agreement, just as we had done for the payee in *Ondrasek*. In doing so, we noted that "*Ondrasek* stands for the proposition that the best interests of the child are served through a policy which

does not preclude a payee from seeking a modification in child support because of a change of circumstances, even though the parties had stipulated to a nonmodifiable amount of support." *Id.* at 177. This description of the *Ondrasek* holding in no way narrows its scope, and it provides additional support for our present conclusion that Pamela may not be precluded "from seeking a modification in child support because of a change of circumstances." *See id.*[4]

¶ 19. Finally, we note that in *Honore v. Honore*, 149 Wis. 2d 512, 439 N.W.2d 827 (Ct. App. 1989), we

---

[4] William also suggests that the supreme court in *Chen v. Warner*, 2005 WI 55, 280 Wis. 2d 344, 695 N.W.2d 758, espoused a narrow view of what this court had decided in *Ondrasek*. The court said this in a footnote: "Divorcing parents cannot 'waive' child support. They cannot give up the children's present and future rights to receive child support. Waivers of child support are void as against public policy." *Id.*, ¶ 6 n.2 (citing *Ondrasek v. Tenneson*, 158 Wis. 2d 690, 695–97, 462 N.W.2d 915 (Ct. App. 1990)). Although William does not explain why he believes this statement should be viewed as narrowing the scope of our holding in *Ondrasek*, perhaps it is because the supreme court spoke in terms of a "waiver" of the right to receive child support and William does not view the agreement in this case as effecting a waiver of support, a position which, as we have explained, we reject. The supreme court spoke of a "waiver of child support" in *Chen* because that is what it concluded the parties had attempted to accomplish in their "somewhat inartfully drafted" marital settlement agreement. *Id.*, ¶ 6 n.2. The dispute in *Chen*, however, was over whether one of the parents was "shirking" when she discontinued full-time employment in order to become "an at-home full-time child care provider," not over whether the parties could "waive" child support. *See id.*, ¶¶ 1, 4. The court mentioned the waiver issue only in a footnote and, in our view, the court's comment affirms our conclusion in *Ondrasek* that "[w]aivers of child support are void as against public policy." *Id.*, ¶ 6 n.2.

upheld a provision in a marital settlement agreement under which the parties agreed that the child support payor would maintain monthly support payments of $700 per month "notwithstanding a reduction in his income or other financial factors at least until the youngest child . . . is in first grade."[5] *Id.* at 514. We characterized the agreement as establishing a " 'floor' below which child support could not drop." *Id.* at 516. Much of our analysis dealt with whether the circuit court had "jurisdiction" to order what the parties had agreed to. *See id.* at 515–16. And, even though we concluded the trial court erred in determining that the parties' child support "floor" agreement violated public policy, *id.* at 518, we expressly declined to address the "reverse situation wherein child support would be waived by stipulation and a subsequent change in circumstances would warrant modifying that provision." *Id.* at 516.

¶ 20. The reserved hypothetical from *Honore* was presented by the facts in *Ondrasek*, and as we have discussed, we concluded a child support payee may not be estopped by the terms of a marital settlement agreement from seeking a modification in child support when circumstances substantially change. Subsequently, we concluded in *Krieman* that the *Ondrasek* rationale required a similar conclusion with respect to a child

---

[5] The duration of this no-reduction-in-support provision was approximately three years. The parties were divorced in June 1986 and the provision was to expire on September 1, 1989. *Honore v. Honore*, 149 Wis. 2d 512, 513–14, 439 N.W.2d 827 (Ct. App. 1989). The payor moved to reduce support in September 1987, barely a year after the parties' divorce and less than two years before the child support "floor" agreement would expire. *Id.* at 514.

support payor's ability to seek a modification, distinguishing *Honore* on the basis that the agreement in the earlier case bound the payor only "for a time certain, at which point he could request a reevaluation." *Krieman*, 214 Wis. 2d at 175. Our holding in *Honore* must thus be confined to its facts—a child support payor may agree and be bound to a "floor" amount of child support for a limited period of time if the term of the limitation is short, *see supra* note 5, and it is "tied" to "a point in time when it would be logical to reexamine both parents' financial circumstances." *Krieman*, 214 Wis. 2d at 175 n.9. *Honore* provides no support for a conclusion that a child support *payee* may waive, even for a limited period of time, the right to seek a child support modification when circumstances change substantially.

¶ 21. We note in closing that the provision before us, which attempts to preclude either party for seven years from seeking to modify the child support agreed upon at the time of the divorce absent "catastrophic circumstances," arguably represents a good faith effort on the part of the parties' counsel to craft a binding limitation by probing the seams of our decisions in *Honore*, *Ondrasek* and *Krieman*. As we have explained, we are convinced that the rationale of *Ondrasek* requires us to reverse the appealed order and remand for consideration of Pamela's modification motion. We now make explicit what was perhaps only implicit from the discussion in *Ondrasek*: any provision in a marital settlement agreement entered into by divorcing parties that purports to limit in any way a child support payee's ability to seek a support modification in the best interests of the children upon a substantial change in circumstances is against public policy; it thus cannot provide a basis to estop the payee from seeking a

modification under Wɪs. Sᴛᴀᴛ. § 767.32(1)(a). Divorcing parties must look to means other than child support to resolve the financial issues between them upon dissolution of their marriage.

## CONCLUSION

¶ 22. For the reasons discussed above, we reverse the appealed order and remand for further proceedings on Pamela's motion to modify child support.

*By the Court.*—Order reversed and cause remanded.