In re the Marriage of:

Paula G. Motte, Petitioner-Appellant,†

v.

David S. Motte, Respondent-Respondent.

Court of Appeals

*No. 2005AP2776. Submitted on briefs November 20, 2006.*
*—Decided March 7, 2007.*

2007 WI App 111

(Also reported in 731 N.W.2d 294.)

† Petition to review denied 5/22/07.

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Mark E. Sanders* and *Angela Chaput Foy* of *Halling & Cayo, S.C.* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Dennis H. Milbrath* of *Levy & Levy S.C.* of Cedarburg.

A nonparty brief was filed by *Margaret W. Hickey* and *Linda Roberson* of the American Academy of Matrimonial Lawyers–Wisconsin Chapter.

A nonparty brief was filed by *Constance M. Chesnik* of the Department of Workforce Development of the State of Wisconsin.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. This is an appeal by Paula Motte from an order establishing the child support arrearages of her former husband, David Motte. The circuit court granted David credit against his accumulated arrearages for the time one of their sons lived with him. Paula pointed out that David had agreed by a previous stipulation that a change in the son's residence would not affect support, but the circuit court held the stipulation to be against public policy and void.

¶ 2. Paula appealed, and we issued a decision in this case in September 2006 upholding the circuit

court's ruling that the stipulation was void. Though the parties had not addressed it, we went further and held that another stipulation between the parties, in which Paula agreed to waive David's earlier arrearages, was also void. We almost immediately decided that it had been unwise to reach this second issue without hearing from the parties on it, and we therefore withdrew our opinion and requested further briefing from the parties and the Wisconsin chapter of the American Academy of Matrimonial Lawyers. Wisconsin's Department of Workforce Development, which administers the child support system, moved to submit a brief as well, and we granted the motion.

¶ 3. After considering the arguments of all, we reaffirm the decision of the circuit court on the first issue. The Mottes' stipulation to make future support unmodifiable in the event of a placement change is against public policy and void. As to the stipulation forgiving David's arrearages, we abandon our earlier position and conclude that it is not contrary to public policy and that WIS. STAT. § 767.32(1m) (2003–04)[1] is no bar to its enforcement. However, we remand this case to the circuit court to determine whether the arrearage waiver was Paula's quid pro quo for David's agreement to the nonmodification stipulation; if it was, we direct that the circuit court invalidate the waiver and calculate David's old arrearages. Paula having been deprived of the benefit of her bargain, David must not be allowed to retain the benefit of his, especially in view of his frequent and long-term underpayment of support.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 4. Paula and David were divorced in 1995. Their divorce settlement awarded joint custody of their two sons, then aged nine and seven, with both to reside primarily with Paula. David is a sales representative and works on commission, so his monthly income varies. Child support was therefore set at 25% of his income with a floor of $1500 per month, to be paid through income assignment by his employer. It was later changed to 22%, still with a floor of $1500 per month, to account for David's business expenses.

¶ 5. In September 1998, the parties entered into two stipulations which were adopted as orders of the circuit court. The first waived any arrearages that David had accumulated prior to that time. The second stipulation maintained David's child support obligation at 22% of income with a $1500 floor but provided that it would decrease to 15.5% of income with a $1200 floor when the Mottes' oldest son graduated from high school in June 2004. The second stipulation also included the following language in the third paragraph:

> 3. Such payments shall continue regardless of the present placement of the minor children and regardless of any change in placement which may occur in the future as long as the Respondent is employed in his current or similar occupation; further, the parties agree they are estopped from objection to enforcement of this stipulation and order.

Paula testified that she requested this stipulation so that child support issues would not affect the placement schedule and to prevent further litigation over child support.

¶ 6. In 2004, Paula realized that since 1998, David had been making his own child support payments, rather than having them paid by income assignment. She believed that David had been paying into the court

on his own, rather than by income assignment, because then he could pay only the floor amount of $1500 instead of 22% of his actual income. She filed an order to show cause for contempt of court seeking payment of any arrearages. The family court commissioner found that David had underpaid child support, found him in contempt, and ordered him to pay arrearages and interest of $136,864.67. David moved for de novo review in the circuit court, disputing the calculation of arrearages. He also moved for a credit against the arrearages under Wis. Stat. § 767.32(1r)(e)[2] based on the fact that the couple's oldest son had lived with him for the past four years, rather than with Paula.

¶ 7.    Paula argued before the circuit court that David had agreed, in paragraph three of the second 1998 stipulation, that a change in their son's placement

---

[2] The legislature reorganized Wis. Stat. ch. 767, effective January 1, 2007, resulting in new statute numbers for many of the provisions. 2005 Wis. Act 443. The old Wis. Stat. § 767.32(1r) (now found in substantially the same form at Wis. Stat. § 767.59(1r) (2005–06)) reads in relevant part:

> In an action under sub. (1) to revise a judgment or order with respect to child support . . . the court may grant credit to the payer against support due prior to the date on which the petition, motion or order to show cause is served for payments made by the payer other than payments made as provided in s. 767.265 or 767.29, in any of the following circumstances:
>
> . . . .
>
> (e) The payer proves by a preponderance of the evidence that the child lived with the payer, with the agreement of the payee, for more than 60 days beyond a court—ordered period of physical placement. Credit may not be granted under this paragraph if, with respect to the time that the child lived with the payer beyond the court—ordered period of physical placement, the payee sought to enforce the physical placement order through civil or criminal process or if the payee shows that the child's relocation to the payer's home was not mutually agreed to by both parents.

would not diminish his support obligation. She therefore claimed that he could not receive credit under Wis. Stat. § 767.32(1r)(e) for the time that their son had lived with him. The circuit court rejected this argument and held that paragraph three was void as against public policy because it purported to remove decisions about future child support from the jurisdiction of the court.

¶ 8. Paula further argued that she had never agreed to the placement of the oldest son with David, one of the requirements for credit under Wis. Stat. § 767.32(1r)(e). The court found that though she had attempted to provide a living space for the son, she "did not really resist" his moving in with David.

¶ 9. Paula finally claimed that David should be equitably estopped from receiving the credit. The court rejected this argument as well and granted David the credit by recalculating his child support at the lower "one-child" rate beginning in July 2000, resulting in a reduction of his arrearages to $53,906.56. Paula appeals the circuit court's grant of the credit to David.

¶ 10. We first address the applicability of the credit before moving on to the waiver of arrearages in the 1998 stipulation. Wisconsin Stat. § 767.32(1r) sets forth the circumstances under which a court may grant credit against past-due child support. Paragraph (e) allows a court to grant credit where a payer proves that the payer's child lived with the payer for more than sixty days beyond the court-ordered physical placement period. The credit may not be granted, however, if the payee attempted to enforce the court-ordered placement or otherwise did not agree to the child's stay with the payer.

¶ 11. The circuit court found that Paula "did not really resist" her son's move to David's house. Paula

claims on appeal that this finding is insufficient to support the court's grant of the credit since the statute requires that the payee parent "agree" to the change in placement. *See* Wis. Stat. § 767.32(1r)(e). She points to her testimony that she asked David repeatedly to send the son back to live with her. However, David testified that it was fine with him if the son went to stay with Paula and that the son was a "handful." It appears from the testimony of both parties that the decision on where to live was ultimately left up to the son.

¶ 12. Whether Paula agreed to the placement arrangement is a question of fact, and we must uphold the circuit court's finding unless it is clearly erroneous. Wis. Stat. § 805.17(2). Though it is clear that Paula was not enthusiastic about her son's living arrangement, we hold that the circuit court was entitled to conclude that her actions and words demonstrated agreement with it.

¶ 13. The statutory requirements for granting the credit being satisfied, the question becomes whether the court was nevertheless bound to deny the credit because the 1998 stipulation provided that the amount of child support would remain the same regardless of where the Mottes' sons lived. The circuit court found that it was not so bound because the stipulation was contrary to public policy.

¶ 14. It is well-established that a stipulation in a court-approved divorce settlement will not bind the court where it is contrary to public policy. *See, e.g., Rintelman v. Rintelman*, 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984); *Honore v. Honore*, 149 Wis. 2d 512, 517, 439 N.W.2d 827 (Ct. App. 1989). We held in *Ondrasek v. Tenneson*, 158 Wis. 2d 690, 692, 462 N.W.2d 915 (Ct. App. 1990), that a stipulation that sets an

628

unmodifiable ceiling on the child support amount is void. We reasoned in that case that "[t]he paramount goal of the child support statute is to promote the best interests of the child" and that therefore "the child's best interests transcend an agreement or stipulation of the parties." *Id.* at 695 (citations omitted). In response to the argument that the stipulation in that case *was* in the child's best interest, we stated:

> Even if the stipulation was fair when it was created, making a child support provision unmodifiable does not necessarily make the stipulation fair in the future. Provisions preventing future determination of the best interests of the child may leave the child inadequately protected. Unforeseen changed circumstances may require support beyond the amount of waived or stipulated child support.

*Id.* at 696–97.

¶ 15. Later, in *Krieman v. Goldberg*, 214 Wis. 2d 163, 571 N.W.2d 425 (Ct. App. 1997), we extended *Ondrasek*, holding that a stipulation making child support unmodifiable was void without regard to whether it was characterized as a "ceiling." *See Krieman*, 214 Wis. 2d at 176–78. Our holding was grounded in the equitable nature of estoppel. *Id.* at 176. We reasoned that if a stipulation could not preclude a payee from seeking a child support increase when circumstances changed, it would be unfair to preclude a payer spouse from seeking a reduction for the same reason. *See id.* at 177. Otherwise, we noted, "the pay[e]r is denied the benefit of his or her bargain, while the payee receives the benefit of his or her bargain without risking the effects of what he or she agreed to in the stipulation." *Id.* (citation omitted).[3]

---

[3] We also distinguished another unmodifiable child support case, *Honore v. Honore*, 149 Wis. 2d 512, 439 N.W.2d 827 (Ct.

¶ 16. Thus, it is clear that an agreement to make child support permanently unmodifiable will not prevent a circuit court from making adjustments for changed circumstances. However, Paula makes two arguments that the stipulation here is not really an agreement to make child support permanently unmodifiable.

¶ 17. Paula first claims that the stipulation here forbids modification only on the grounds of a change in placement, and that David was not precluded from seeking modification should other relevant circumstances change. That may be true, but it does not distinguish this case from *Ondrasek*, in which the stipulation enumerated some circumstances that would allow for modification and excluded others. *Ondrasek,* 158 Wis. 2d at 693 n.2.

¶ 18. Paula next claims that the stipulation does not prevent the court from modifying support, but only prevents the parties from "objecting to enforcement" of the stipulation. It is true that the stipulation states that the parties are "estopped from objection to enforcement of this stipulation and order." However, this is not the part of the stipulation that concerns us. The problem is the statement that "[s]uch payments shall continue regardless of . . . any change in placement which may occur in the future." On its face, this clause aims to make support unmodifiable where a placement change

App. 1989), noting that the stipulation in that case applied only until the child in question began the first grade. *Krieman v. Goldberg,* 214 Wis. 2d 163, 174–76, 571 N.W.2d 425 (Ct. App. 1997). This "date certain" arrangement allowed the court to reconsider the support level at a time when it would be "logical to reexamine both parents' financial circumstances." *Id.* at 175 n.9. The stipulation between the Mottes contained no such time limitation.

would otherwise call for an adjustment. As we held in *Ondrasek* and *Krieman,* stipulations to this effect are not binding on the court.[4]

¶ 19.  We recognize that, according to Paula, the stipulation was written with the best interests of the

---

[4] Paula also claims that a change in placement does not constitute the "substantial change in circumstances" required for a court to modify support. *See* WIS. STAT. § 767.32(1)(a). Paula relies on *Beaudoin v. Beaudoin,* 2001 WI App 42, ¶ 4, 241 Wis. 2d 350, 625 N.W.2d 619, in which a former wife sought a child support modification based upon her ·former husband's failure to take physical placement of the child for four out of the court-ordered 148 days. We rejected the claim that this four-day lapse constituted a substantial change in circumstances. *Id.,* ¶ 12. But we did not hold that a change in placement could never amount to a substantial change in circumstances. *See id.* Further, the list of factors quoted in *Beaudoin* as relevant to whether a change of circumstances exists is not exhaustive. *Id.,* ¶ 6 (the events listed are "*among* the relevant factors to be considered" (citation omitted; emphasis added)). The statute explicitly states that the court may consider "[a]ny other factor that the court determines is relevant." Sec. 767.32(1)(c)4.

Paula also claims that *Severson v. Severson,* 71 Wis. 2d 382, 387–88, 238 N.W.2d 116 (1976), held that a stipulation agreed to by the parties to a divorce and recommended to the trial court cannot be contrary to public policy. If *Severson* in fact stood for this proposition, it would be flatly contrary to much of the case law we have discussed and would force us to view this case differently; however, it quite clearly does not. The court in *Severson* was discussing a stipulation that would reduce child support automatically as each child attained majority; it stated that the provision was not contrary to public policy. While the court also commented that this was so, "particularly . . . where it was recommended to the trial court in a stipulation of the divorcing parties," the main point was that the stipulation did not violate public policy. *Id.* at 388. The *Severson* court did not hold, as Paula argues, that no stipulation entered into by divorcing parties and adopted by a court can be contrary to public policy.

631

children in mind. She testified that the purpose of the stipulation was to insulate placement decisions from the influence of money by taking away any financial incentive for either parent to seek (and litigate for) greater placement time. Under the stipulation, the children would be free to move back and forth between the parents and, in Paula's words, "have their full lives."

¶ 20. But regardless of the good intentions of the parents, the best interests of the child may change over time. This is why the courts must retain the power to adapt child support to changing circumstances. The legislature provided courts with that power in WIS. STAT. § 767.32(1), and parties may not abrogate it, even by court-approved stipulation. *See Ondrasek,* 158 Wis. 2d at 692, 695; *see also Severson v. Severson,* 71 Wis. 2d 382, 389–90, 238 N.W.2d 116 (1976) (concern for the welfare of the children would preclude a court's agreeing to a stipulation precluding future modification). And a child's placement situation is clearly relevant to what child support is appropriate. In this case, for example, the Mottes' children at first lived primarily with their mother, and the father paid money to her to provide for their needs. One of the sons later moved in with his father, which presumably means that the father was spending more money to provide for the child directly.[5] It makes little sense for the father to

_____

[5] The shared- and split-placement formulas for child support reflect this reality—that the parent with whom the child lives will incur the basic costs of caring for the child—by establishing formulas whereby support is paid in proportion to the time each child spends with each parent. *See* WIS. ADMIN. CODE § DWD 40.04(2) and (3) (Dec. 2003).

One commentator (responding to our earlier, withdrawn opinion in this case) described a problem created by Wisconsin's methodology: because Wisconsin law ties child support levels

keep sending the same amount of money to the mother under these circumstances; if the father has limited income, the fact that he must send some of it to the mother will actually *harm* the financial interest of the child living with him. This is precisely the type of changed circumstance that a court needs to retain the power to address, and the good intentions of the parties do not change this fact. *See Ondrasek*, 158 Wis. 2d at 696 ("Even if the stipulation was fair when it was created, making a child support provision unmodifiable does not necessarily make the stipulation fair in the future. Provisions preventing future determination of the best interests of the child may leave the child inadequately protected."). It is no answer to say, as Paula does, that as it turned out, David had plenty of income. The stipulation was void in 1998 because it purported to deprive the court of the power to modify support in response to unpredictable future events. The fact that, as it happened, David did well financially does not alter the public policy behind the *Ondrasek* rule.[6]

---

to placement, effectively rewarding a parent economically for increased placement time, placement battles arise that are "premised less on wanting to be a parent, and more on wanting a financial advantage." Gregg Herman, *Court Interferes with Agreement Between Parents,* Wis. Law. J., October 11, 2006, at 19A. We note that a circuit court certainly is not compelled to reward parents for such behavior; it may depart from the percentage guidelines where it finds that the guidelines are unfair to the child or any of the parties. *See* Wis. Stat. § 767.25(1m). We are not unmindful of the problem, either in Paula's case or more broadly; we simply hold that the removal of child support issues from the court's purview is not the solution.

[6] Paula urges that we nevertheless hold David to paragraph three, claiming that he should be "estopped" from challenging its enforcement against him. This we cannot do; one of the conditions for estoppel in this context is that the agreement to

We therefore reaffirm our original holding on this issue: paragraph three of the 1998 stipulation is void as against public policy.[7]

¶ 21. However, we cannot say the same with regard to our other holding in the original decision: that the forgiveness of David's arrearages in the same stipulation was likewise void. We came to that conclusion based upon our reading of WIS. STAT. § 767.32(1m)[8] and our supreme court's discussion of that statute in *Barbara B. v. Dorian H.*, 2005 WI 6, ¶¶ 12–14, 277 Wis. 2d 378, 690 N.W.2d 849. The statute provides that

[i]n an action under sub. (1) to revise a judgment or order with respect to child support . . . the court may not revise the amount of child support . . . or an amount of arrearages in child support . . . prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

¶ 22. As the supreme court explained in *Barbara B.*, under this provision "a circuit court is permitted to grant credit against child support arrearages pursuant only to the limited circumstances enumerated in [WIS. STAT.] § 767.32(1r)(b)-(f)." *Barbara B.*, 277 Wis. 2d 378, ¶ 15. We initially took this to forbid the arrangement entered into by David and Paula.

¶ 23. However, the parties and amici in this case have convincingly argued that the statute, while prohibiting the *court* from reducing arrearages, does not

be enforced not violate public policy. *See Lawrence v. Lawrence*, 2004 WI App 170, ¶ 6, 276 Wis. 2d 403, 687 N.W.2d 748.

[7] We note that this conclusion is in accord with *Wood v. Propeck*, 2007 WI App 24, 299 Wis. 2d 470, 728 N.W.2d 757.

[8] Now recodified at WIS. STAT. § 767.59(1m); see footnote 2 *supra.*

prevent the parties from compromising or waiving them subject to court approval. The statutory prohibition applies to "an action under [Wis. Stat. § 767.32(1)]," which sets forth procedures for the modification of child support and other divorce-related payments. Subsection 767.32(1) states that actions to revise support can be commenced by the petition of either of the parties to the divorce or one of the concerned state or county agencies. It therefore appears that the prohibition of § 767.32(1m) applies in the case of an adversarial proceeding under this statute, and not to a court-approved joint stipulation like the one between the Mottes.

¶ 24.   The history of Wis. Stat. § 767.32(1m) supports this reading. The section was enacted in response to the federal government's move to cut off certain federal funds to states that allowed for the forgiveness of child support arrearages. *See Barbara B.*, 277 Wis. 2d 378, ¶ 23. Because a desire to continue receiving the federal funds was a central motivation for the passage of § 767.32(1m), *see Barbara B.*, 277 Wis. 2d 378, ¶ 23, it stands to reason that the statute would modify existing law only as it was necessary to keep the funds. Administrative materials from the federal Office of Child Support Enforcement demonstrate that that agency does not consider the "compromise" of arrearages to jeopardize federal funding.[9] We therefore agree

[9] *See* U.S. Dep't of Health and Human Servs., Admin. for Children and Families, Office of Child Support Enforcement Action Transmittal OSCE-AT-89–06, "Prohibition of Retroactive Modification of Child Support Arrearages" at Comment 14, (Apr. 19, 1989), *available at* http://www.acf.hhs.gov/programs/cse/pol/AT/1989/at-8906.htm (arrearages may "be compromised or satisfied by specific agreement of the parties on the same grounds as exist for any other judgment in the State"); *see also*

with the parties and the amici that Paula and David's stipulation to waive David's arrearages was not contrary to statute.

¶ 25. Nor does a court-approved agreement to waive arrearages pose a threat to a child's future well-being, as does an agreement to preclude future modification of support. Arrearage forgiveness or compromise does not remove the court's ability to adapt to changing future circumstances; instead, it can serve to adjust past assumptions to present reality for the benefit of all, including the child. For example, in the "bird-in-the-hand" scenario posited in the DWD's brief, a payee parent may recognize that the payer is unlikely, for whatever reason, ever to make good on a large arrearage. A smaller, immediate payment may be more valuable to the payee and the child with immediate needs than a larger but less- certain payment somewhere down the road.

¶ 26. We therefore abandon our original holding that Paula and David's court-approved arrearage waiver was void as contrary to public policy. However,

U.S. Dep't of Health and Human Servs., Admin. for Children and Families, Office of Child Support Enforcement Policy Interpretation Question PIQ-00–03, "State IV-D Program Flexibility with Respect to Low Income Obligors—Imputing Income; Setting Child Support Orders and Retroactive Support; Compromising Arrearages; Referral to Work-Related Programs and Other Non-traditional Approaches to Securing Support" (Sept. 14, 2000), *available at* http://www.acf.hhs.gov/programs/cse/pol/PIQ/2000/piq-00–03.htm. For a general discussion of the historic background and implications of WIS. STAT. § 767.32(1m), *see* Aaron Branksy, *An Unfortunate Change of Circumstances: Wisconsin Prohibits Retroactive Revision of Child Support Orders*, 1988 Wis. L. Rev. 1123.

we cannot ignore the injustice that would be done if, as the record suggests, Paula agreed to the arrearage waiver in exchange for David's agreement with paragraph three. If this is the case, it would be à miscarriage of justice to allow David to keep the benefit of his bargain while depriving Paula of hers. Paula urges that this was, in fact, a quid pro quo arrangement, but David disagrees. We cannot make the factual findings required to resolve this issue, and so we remand to the circuit court pursuant to our discretionary reversal power. *See* WIS. STAT. § 752.35; *see also Vollmer v. Luety*, 156 Wis. 2d 1, 15–16, 456 N.W.2d 797 (1990). If the circuit court finds that the arrearage waiver was, in fact, given in exchange for paragraph three, it should invalidate the waiver and calculate David's arrearages. If not, the waiver will stand.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.