COURT OF APPEALS
DECISION
DATED AND FILED

October 30, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP381-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2019FA529

IN COURT OF APPEALS
DISTRICT II

IN RE THE MARRIAGE OF:

CHRISTOPHER WILLIAM ROSE,

PETITIONER-APPELLANT,

V.

TAMMY JO ROSE,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Kenosha County: JON E. FREDRICKSON, Judge. *Affirmed in part, reversed in part, and cause remanded with directions*.

Before Neubauer, Grogan and Lazar, JJ.

¶1 LAZAR, J. Christopher William Rose appeals from an order of the circuit court denying his motion for credit for overpayment of child support

pursuant to Wis. Stat. § 767.59(1r)(e) (2021-22)[1] and for modification of his child support order to include an offset for health insurance costs. We conclude that the circuit court erred in interpreting § 767.59(1r)(e) as requiring a payer of child support to have physical placement for sixty *consecutive* days beyond that ordered by the court in order to be eligible for credit, so we reverse and remand with respect to that issue. We affirm with respect to the health insurance issue.

## BACKGROUND

¶2      After almost fourteen years of marriage, Christopher[2] filed a petition for divorce from Tammy Jo Rose, with whom he had four minor children. The parties reached agreement on custody and placement of their children in late 2019. They filed their agreement as a partial stipulation in December 2019, and the same agreement was incorporated into their judgment of divorce on April 21, 2020. The agreement provided for "9/5" placement in favor of Tammy during the school year, which meant that the children would be placed with Tammy for nine overnights in comparison to Christopher's five overnights, with Christopher having the right to two additional evening placements (5:00 p.m. to 8:30 p.m.) during Tammy's nine-day block. The parties also agreed, and the circuit court ordered, that Christopher would "continue to cover the parties' minor children under a policy of health insurance and that he should be responsible for the premium costs associated with the same." Although the parties had waived

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reference, the parties are referred to by their first names.

maintenance, Christopher was ordered to make monthly child support payments of $5,700.

¶3      The parties did not strictly adhere to the placement schedule ordered by the circuit court. This was due at least in part to the fact that the children attended school in the Kenosha Unified School District, where the marital home had been and where Christopher continued to live, while Tammy had moved to McHenry County, Illinois, about an hour's drive away. Relevant to this appeal, the "children were in the primary care of [Christopher]" for the five months from October 2022 through February 2023.

¶4      On March 6, 2023, Christopher filed the motion underlying this appeal. In his accompanying affidavit, he attested that Tammy attempted to try the original 9/5 placement schedule at the beginning of the 2022-23 school year, but that the "arrangement … didn't work and [Tammy] realized this after only a couple of weeks." He further attested that Tammy had communicated her intention to sell her house in Illinois and move closer to the children's school, but that beginning in October and as of March 6, "the placement of the children … at [Tammy's] request" was "70% with [Christopher], and 30 % with [Tammy]." From November 2022 until he filed his motion, Christopher's affidavit further stated, he unsuccessfully attempted to negotiate a stipulation in accordance with Tammy's wishes for placement that adjusted the amount of child support he paid. Christopher sought an order granting him placement for each school week and one weekend per month until Tammy completed her move, a modification of the child support order, and a credit for overpayment of child support from October 2022 through February 2023 pursuant to WIS. STAT. § 767.59(1r)(e).

¶5     Tammy did not contest that she agreed to "<u>temporarily</u> alter" the court-ordered placement schedule while she attempted to sell her home in Illinois, which "took longer than expected."[3]   Nevertheless, after a hearing, the circuit court denied Christopher's request for a credit for overpayment of child support for the months of October 2022 through February 2023 based upon its conclusion that, "although the minor children were in the primary care of [Christopher] during this period of time," WIS. STAT. § 767.59(1r) was inapplicable because Tammy did not forego placement for more than sixty consecutive days beyond a Court-ordered period of placement.[4]   The court then ordered, based upon a stipulation of the parties, that Christopher and Tammy would have equal shared placement of the children beginning in June 2023, with an adjusted child support payment from Christopher.   The court determined, however, that Christopher was not entitled to offset this support obligation based on his payment for the children's health insurance as he had requested.

---

[3] Tammy now states that "she does dispute Christopher's position that he was exercising 75% of the placement."  As noted above, Christopher attested in his February 2023 affidavit that he had 70% placement during the relevant time.  In a brief filed with the circuit court on December 11, 2023, he asserted that "he had the children in his care more than seventy-five percent (75%) of the time" from September 2022 through May 2023.  Tammy does not challenge the circuit court's finding that the "children were in the primary care" of Christopher during the relevant time period and she "did not present any contrary arguments or calculations" challenging Christopher's assertion that the additional placement time with him was at least sixty days in excess of that ordered by the court as required to trigger WIS. STAT. § 767.59(1r)(e).  But Christopher stated in December 2023 that "the amount of time that both parents were spending with the minor children during the entirety of the school year of 2022 – 2023 … will require a fact-finding hearing."  This potential factual issue is left to the circuit court on remand.

[4] Christopher's motion was initially heard and granted by a court commissioner, who ordered that the children were to have 60% placement with Christopher and 40% placement with Tammy, that Christopher's child support payments be reduced, and that, "based upon the uncontested fact that [Christopher] had placement of at least 70% … from October 1, 2022 through [May 4, 2023]," Christopher was entitled to credit for overpayment during that time period pursuant to WIS. STAT. § 767.59(1r)(e). Tammy moved for de novo hearing on the issues of child support and placement.

¶6      Christopher appeals, arguing that the circuit court erroneously exercised its discretion in disallowing a child support credit for the October 2022-February 2023 time period when he had primary placement of the children and in declining to modify the child support order to account for payments made for the children's health insurance.

## STANDARD OF REVIEW

¶7      This court "review[s] a circuit court order regarding child support for an erroneous exercise of discretion." *Franke v. Franke*, 2004 WI 8, ¶72, 268 Wis. 2d 360, 674 N.W.2d 832.  "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (alteration in original) (quoting *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)).  We reverse if a discretionary decision is based on a mistaken view of the law.  *See Cook v. Cook*, 208 Wis. 2d 166, 171-72, 560 N.W.2d 246 (1997).  Whether a circuit court based its decision relating to child support on the correct interpretation of a statute is a question of law that we review independently.  *Id.* at 172.

## DISCUSSION

### A.      Credit for Overpayment Pursuant to WIS. STAT. § 767.59(1r)(e)

¶8      Christopher's first argument is that the circuit court applied the incorrect legal standard to the issue of credit for overpayment of child support, wrongly holding that WIS. STAT. § 767.59(1r)(e) requires the payer to have placement for sixty *consecutive* days beyond the court-ordered placement before being eligible for this credit.  Indeed, the court rested its decision denying credit

on the uncontested fact that Christopher "never exercised placement for more than 60 continuous days beyond the end of a court-ordered period of physical placement."

¶9 As always when we endeavor "to faithfully give effect to the laws enacted by the legislature," we begin, as instructed by our supreme court in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶44-45, 271 Wis. 2d 633, 681 N.W.2d 110, with the text of the statute in question. WISCONSIN STAT. § 767.59(1r) provides:

> In an action under sub. (1c) to revise a judgment or order with respect to child support or family support, the court may grant credit to the payer against support due prior to the date on which the petition, motion, or order to show cause is served for payments made by the payer … in any of the following circumstances:
>
> ….
>
> (e) The payer proves by a preponderance of the evidence that the child lived with the payer, with the agreement of the payee, *for more than 60 days beyond a court-ordered period of physical placement*. Credit may not be granted under this paragraph if, with respect to the time that the child lived with the payer beyond the court-ordered period of physical placement, the payee sought to enforce the physical placement order through civil or criminal process or if the payee shows that the child's relocation to the payer's home was not mutually agreed to by both parents.

(Emphasis added). We are to give this language—in this case, the phrase "60 days beyond a court-ordered period of physical placement"—"its common, ordinary, and accepted meaning." *See Kalal*, 271 Wis. 2d 633, ¶45. In so doing, we must consider the context in which the language is used, "in relation to the language of surrounding or closely-related statutes." *Id.*, ¶46.

¶10 The language used in closely related statutes is particularly important in this case, because several other sections of WIS. STAT. ch. 767

address the number of days a party in a family law action may do certain things with a child before such activity triggers legal consequences. For example, WIS. STAT. § 767.215(2)(j)2. states that a party may be held in contempt of court if he or she "[r]emov[es] a minor child of the parties from the state for more than 90 consecutive days" during the pendency of a divorce case. *See also* WIS. STAT. § 767.117(1)(c) (prohibiting "removing a minor child of the parties from the state for more than 90 consecutive days"). Similarly, WIS. STAT. § 767.481(6) states that "a person who has legal custody of and periods of physical placement with the child shall notify any other person who has periods of physical placement with the child before removing the child from the child's residence for a period of more than 14 consecutive days." By contrast, the formula[5] used in determining the child support obligations of shared-placement parents counts the number of "days per year based on the number of overnights" to determine the percentage of a year that a parent has placement—without regard to whether those days are consecutive. *See* WIS. ADMIN. CODE § DCF 150.035(1)(a) (Dec. 2023).

¶11     That certain provisions are explicit when requiring *consecutive* days is significant because "where the legislature uses similar but different terms in a statute, particularly within the same section, it is presumed that the legislature intended such terms to have different meanings." *Nelson v. McLaughlin*, 211 Wis. 2d 487, 496, 565 N.W.2d 123 (1997); *see also State v. Smits*, 2001 WI App 45, ¶¶10-15, 241 Wis. 2d 374, 626 N.W.2d 42 (using this rule of statutory interpretation to determine that the term "motor vehicle" was a more restrictive term and not coextensive with the term "vehicle" when both terms were used in the same section of a criminal statute). "It is reasonable to presume that the

---

[5] The legislature authorized the Department of Children and Families to "promulgate rules that provide a standard for courts to use in determining a child support obligation based upon …. the amount of physical placement with each parent," among other things. WIS. STAT. § 49.22(9).

legislature chose its terms carefully and precisely to express its meaning." *Smits*, 241 Wis. 2d 374, ¶15 (citation omitted). We decline to construe the phrase "60 days" in WIS. STAT. § 767.59(1r)(e) as "60 consecutive days"; we may not add words to a statute under the guise of interpreting it. *See **Lovelien v. Austin Mut. Ins. Co.**, 2018 WI App 4, ¶15, 379 Wis. 2d 733, 906 N.W.2d 728 (2017) ("[C]ourts avoid interpretations that require inserting words into statutes.").

¶12 The circuit court did not address the legislature's use of "consecutive days" in other provisions of WIS. STAT. ch. 767. It did, however, mention the language of WIS. STAT. § 767.41(6)(h)3., which requires "a parent granted periods of physical placement" to obtain a court order before relocating one hundred miles or more from another parent who also "has court–ordered periods of physical placement." The court deemed important that WIS. STAT. § 767.59(1r)(e), by contrast, states that credit may be due a payer if a child lives with the payer "for more than 60 days beyond a court-ordered period"—singular—"of physical placement." In the court's view, this use of the singular "period" rather than the plural "periods" signaled the legislature's intent that credit would be due a payer only if the "60 days [is beyond] one of the court-ordered periods." In other words, the court concluded that the sixty days with the payer had to follow a *single* court-ordered period of placement with the payee, meaning the sixty days with the payer would have to be uninterrupted, i.e., consecutive. The court suggested that the purpose of paragraph (1r)(e) was to correct for overpayment of child support when a parent essentially abandons a child or "skips off" for an extended period, leaving the children with the other parent.

¶13 We disagree. Pursuant to WIS. STAT. § 990.001(1), "[t]he singular includes the plural, and the plural includes the singular" in statutory construction. Determining whether credit is due requires a baseline against which the sixty extra days of placement can be measured. The "court-ordered *period* of physical placement" is that baseline. *See* WIS. STAT. § 767.59(1r)(e) (emphasis added). In

this case, Christopher's court-ordered period of physical placement from October 2022 through February 2023 was five out of every fourteen days pursuant to the 9/5 placement schedule (in favor of Tammy) to which the parties agreed and the court ordered at the time of divorce. Thus, his court-ordered period of physical placement was approximately thirty-six percent of the time. The parties agree that the children actually lived with Christopher a higher percentage of the time, and § 767.59(1r)(e) provides that credit may be granted if the difference between the actual period of placement and the court-ordered period of placement is more than sixty days—the number of extra days that the legislature deemed sufficient to justify crediting a payer (whose obligation was calculated based on a lesser period of placement) in that special circumstance where the increased placement with the payer was by agreement with the payee before a change to the support obligation is formally requested.

¶14    Christopher persuasively argues that our case law (albeit scant) is in harmony with the interpretation that WIS. STAT. § 767.59(1r)(e) does not require sixty consecutive days in excess of court-ordered placement (or abandonment by the payee) for credit eligibility. In both *Motte v. Motte*, 2007 WI App 111, ¶¶8, 11-12, 300 Wis. 2d 621, 731 N.W.2d 294, and *Monicken v. Monicken*, 226 Wis. 2d 119, 122, 132, 593 N.W.2d 509 (Ct. App. 1999), this court recognized subsection (1r) as an exception to § 767.59(1m), which prohibits retroactive revisions to child support except in the case of a calculation error, and held that a payer could be entitled to credit under § 767.59(1r)(e). In neither case was there

9

mention of whether the payer had sixty *consecutive* days of placement beyond the placement ordered by the court.[6]

¶15　For her part, Tammy does not defend the circuit court's interpretation of WIS. STAT. § 767.59(1r)(e) with any textual argument. Instead, she argues that § 767.59(1m)—the statute that generally prohibits retroactive revisions to child support—controls because "there is conflict" between the two subsections of § 767.59. There is no conflict. There is simply the general rule in subsection (1m) and exceptions to that rule in subsection (1r) that allow a payer to be credited for "payments made under specified circumstances," as we acknowledged in ***Zimmer v. Zimmer***, 2021 WI App 40, ¶8 n.2, 398 Wis. 2d 586, 961 N.W.2d 898, although the payer in that case did not allege that any of the circumstances in subsection (1r) applied.[7]

¶16　Tammy also argues that the "60 days" in WIS. STAT. § 767.59(1r)(e) is ambiguous—subject to multiple interpretations—and that the circuit court's interpretation should be adopted because it is reasonable. She offers no authority for her assertion that "it is not the function of the reviewing court to pick the correct interpretation [but] only to affirm whether the lower court's interpretation is rooted in reason." In fact, it is precisely the job of a reviewing court to

---

[6] Tammy mischaracterizes the holding of ***Monicken v. Monicken***, 226 Wis. 2d 119, 593 N.W.2d 509 (Ct App. 1999), asserting that it "clearly and unambiguously" states "that a court may grant a credit to a payer for support paid 'on the date on which the motion for payment is served … under the limited circumstances' outlined in WIS. STAT. § 767.32(1r) [renamed as the current § 767.59(1r)]" and cannot grant credit for a period preceding a motion for amendment to a support order. In fact, ***Monicken*** states that the statute's "plain and unambiguous language … permits a court to grant credit to a payer against support due on the date on which the motion for payment is served." ***Monicken***, 226 Wis. 2d at 130-31. Far from holding that the court's ability to grant credit begins on the day the payer's motion is filed, it is explicit that credit for past payments may be granted pursuant to subsection (1r). ***Id.***

[7] Tammy is therefore incorrect in citing this case for the proposition that our case law "allows for a retroactive correction in support *only* when there has been a mathematical mistake." (Emphasis added).

determine the correct interpretation of a statute in analyzing whether a circuit court properly exercised its discretion by applying the correct standard of law. *E.g.*, *LeMere*, 262 Wis. 2d 426, ¶¶15-22 (interpreting statute de novo to determine whether circuit court properly exercised its discretion in property division).

¶17    Moreover, if the text of a statute is indeed ambiguous and subject to multiple reasonable interpretations—which, as discussed above, is not the case here based on the legislature's clear choice to use the word "days" instead of "consecutive days"—the next step is to determine legislative intent by looking to extrinsic sources such as legislative history. *Kalal*, 271 Wis. 2d 633, ¶¶47-51. Even if Tammy were correct that the statute is ambiguous, she has identified no legislative history (and the court is aware of none) supporting her position. *See Barbara B. v. Dorian H*, 2005 WI 6, ¶¶25-27, 277 Wis. 2d 378, 690 N.W.2d 849 (summarizing legislative history of subsections (1m) and (1r), which were enacted to maintain state eligibility for certain federal funds while achieving fairness for child support payers, neither of which would apparently be affected by whether the days triggering credit eligibility were consecutive or not).

¶18    "We will not read into the statute a limitation the plain language does not evidence." *County of Dane v. LIRC*, 2009 WI 9, ¶33, 315 Wis. 2d 293, 759 N.W.2d 571. This is especially so when, as in this case, the surrounding statutory language makes very clear that when the legislature intended for the number of days necessary to trigger a legal consequence in a family action to be consecutive rather than cumulative, it made the requirement of "consecutive days" explicit. We conclude as a matter of law that WIS. STAT. § 767.59(1r)(e) does not require the payer of child support to exercise placement for a period of sixty consecutive days in order to be eligible for a child support credit. Thus, we remand to the circuit court for a determination of whether Christopher should be granted the credit he sought for overpayment of child support from October 2022 through February 2023.

**B.** **Modification of Child Support Order to Include Health Insurance Costs**

¶19 We turn to Christopher's other issue on appeal: the circuit court's denial of his request for modification of his child support obligation based on his payment of the children's health insurance costs. As the court noted, "the Judgment of Divorce … required [Christopher] to be solely responsible for the cost of the health insurance unless [Tammy] has health insurance available to her through a benefit of employment, which is not the case at the present time." Christopher's initial motion did not reference his payment of health insurance costs as a basis for any of his requested relief. At the circuit court's de novo hearing, his counsel stated with respect to this issue, "I'm not asking you to modify [the MSA incorporated in the judgment of divorce]. I'm asking that he be given credit for it." Before this court, Christopher argues that "[t]he trial court in this case erred when it concluded that it could not, and would not, modify any health-related costs which occurred nearly 4 years after the original judgment of divorce was entered."

¶20 While health care insurance costs are recognized as an aspect of child support that *may* be modified upon findings of a change of circumstance, *Kuchenbecker v. Schultz*, 151 Wis. 2d 868, 871, 876, 447 N.W.2d 80 (Ct. App. 1989), whether to modify this aspect of a child support order is a decision within the circuit court's discretion, *see Franke*, 268 Wis. 2d 360, ¶72. Nothing in the court's oral ruling or written order suggests that it made its decision with respect to the payment of health insurance costs based upon a misinterpretation of law or the incorrect belief that it was not *able* to make such modification under the law; it stated that its decision not to modify the court order in this respect (or give credit for health insurance costs) was based on the parties' agreement that Christopher

12

would be solely responsible for this cost and its disinclination to disturb that bargained-for provision based on the facts presented and absent a substantial change in circumstances.

¶21   While there was some discussion of the increased cost of health insurance since the judgment of divorce, Christopher's argument to the circuit court seemed to be based primarily on his increased placement.   The court acknowledged that "placement might change what's being paid and healthcare is more expensive," but determined that neither fact warranted a change to Christopher's court-ordered obligation to pay for his children's health insurance.   Thus, the court analyzed the relevant facts and, in our view, made a reasonable decision based on a correct interpretation of law.   *See LeMere*, 262 Wis. 2d 426, ¶13.

## CONCLUSION

¶22   For the foregoing reasons, we reverse the circuit court's decision relating to credit for overpayment of child support pursuant to WIS. STAT. § 767.59(1r)(e) and remand for a determination of whether credit is warranted with the understanding that the statute provides that a payer may be eligible for credit upon establishing placement over sixty days, in total, in excess of that ordered by the court.   We, however, affirm the circuit court's decision related to Christopher's request for modification of child support with respect to health insurance costs for the parties' children.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded with directions.

Recommended for publication in the official reports.